UNITED STATES of America, Plaintiff–Appellee,

v.

Alfonso MANCERA–LONDONO, aka Alfonso Mancera, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Jose Rigo SANCHEZ–GONZALES, Defendant–Appellant.

Nos. 89–50383, 89–50417.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1990.

Decided Aug. 27, 1990.

---

Gary S. Wigodsky, Overland, Berke, Wesley, Gits, Randolph & Levanas, Los Angeles, Cal., for defendant-appellant Mancera.

Robert N. Harris, Gonzalez & Harris, Los Angeles, Cal., for defendant-appellant Sanchez–Gonzales.

Ellyn M. Lindsay, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ALARCON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are asked to decide whether the "inevitable discovery" exception to the exclusionary rule may be invoked where the law enforcement agency, pursuant to its oral policy, requires inventory searches of rental cars before return to their owners.

I

On September 22, 1988, DEA agents began surveillance of the Pacifica Hotel in Los Angeles after receiving an FBI tip that a cocaine transaction involving suspected drug dealers was likely to occur there that day. At approximately 7:00 a.m., the agents observed two men, later identified as defendants Jose Sanchez and Alfonso Mancera, leave Room 108. The agents followed Sanchez and Mancera to the hotel parking lot, where they entered and then drove away in a station wagon. The agents ran a check on the station wagon's license plate number and learned that the vehicle was registered to Budget Rent-a-Car. The defendants engaged in counter-surveillance tactics by driving around certain city blocks numerous times and making U-turns before stopping for Sanchez to get into a pickup truck. After engaging in more counter-surveillance activity, the defendants both drove back to the parking lot of the Pacifica Hotel in their respective vehicles.

Once back in the parking lot, the defendants proceeded to transfer items from the pickup to the station wagon. They then closed the vehicles and began to walk towards the hotel. At this point, two agents arrested the defendants. Approximately five to ten minutes after the arrest, the agents conducted a warrantless search of the vehicles. The agents found nothing in the pickup. In the station wagon they found a doll, some cassette tapes, and five suitcases containing a total of 150 kilograms of cocaine.

On October 4, 1988, a federal grand jury for the Central District of California returned an indictment charging Mancera and Sanchez with conspiracy to possess with intent to distribute 150 kilograms of cocaine and with possession with intent to distribute 150 kilograms of cocaine. Both defendants pleaded not guilty to the charges.

On November 7, 1988, the defendants filed a joint motion to suppress all evidence obtained during, following, or resulting from searches and seizures conducted at and after their arrests at the Pacifica Hotel on September 22, 1988, which was denied.

Subsequently, both defendants pleaded guilty to the charge of possession with intent to distribute 150 kilograms of cocaine, but reserved their right to appeal from the district court's order denying their motion to suppress.

Sanchez and Mancera appeal from the order denying their joint motion to sup-

press. We have jurisdiction under 28 U.S.C. § 1291.

## II

■ Appellants argue that the DEA's warrantless search of their rented station wagon violated their fourth amendment right to be free of unlawful searches and seizures. In light of this alleged violation, appellants contend that the district court erred in denying their motion to suppress.

The government responds by arguing that the evidence was properly admitted under the inevitable discovery doctrine, an exception to the exclusionary rule.[1] This doctrine applies when "the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching." *Nix v. Williams*, 467 U.S. 431, 447–48, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984). The government must demonstrate by a preponderance of the evidence that the item sought to be introduced in evidence would have been lawfully found. *Id.* at 444, 104 S.Ct. at 2509; *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986). The government here contends that the incriminating evidence would have been lawfully discovered pursuant to an inventory search of the vehicle.

Appellants disagree and make the following arguments that the government's inventory procedures would not have led to an inevitable discovery of the evidence: (1) the DEA's oral policy is not sufficiently standardized; (2) the DEA never had legal custody of the station wagon; and (3) the DEA's policy does not require a search of closed containers found in inventoried vehicles. We address each of these arguments in turn.

## A

■ Inventory searches must be conducted according to standard agency procedures. *See South Dakota v. Opperman*, 428 U.S. 364, 372–75, 96 S.Ct. 3092, 3098–

00, 49 L.Ed.2d 1000 (1976); *Colorado v. Bertine*, 479 U.S. 367, 374 n. 6, 375, 107 S.Ct. 738, 742 n. 6, 743, 93 L.Ed.2d 739 (1987). Any "discretion [must be] exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375, 107 S.Ct. at 743.

Appellants argue that the DEA's rental car inventory procedures are not sufficiently standardized because they are oral rather than written. While appellants concede that we have never required that such procedures be written, they suggest that we should strongly "prefer" such procedures. Appellants would infer such a "preference" from *United States v. Scott*, 665 F.2d 874, 877 (9th Cir.1981), and *United States v. Vasey*, 834 F.2d 782, 790 n. 4 (9th Cir.1987), where we upheld vehicle inventory searches conducted pursuant to written agency procedures.

We reject appellants' suggestion that inventory procedures need be written to be standardized. "[I]n order to ensure that the inventory search is 'limited in scope to the extent necessary to carry out the caretaking function,' it must be carried out in accordance with the standard procedures" of the law-enforcement agency. *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir.1989) (quoting *Opperman*, 428 U.S. at 375, 96 S.Ct. at 3100). Such procedures need not be written, however. In *United States v. Feldman*, 788 F.2d 544, 550–53 (9th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987), we upheld an inventory search conducted pursuant to the oral procedures of the Orange County Police Department. We were concerned in *Feldman* about the amount of discretion given to the officers by the department's procedures, but the fact that the procedures were oral rather than written did not give us pause.

Agent Sherman testified that the DEA's "policy is to return ... [rental] cars to the rental agency." Reporter's Transcript,

---

**1.** For the sake of this appeal, the government concedes that Mancera and Sanchez had standing to challenge the search.

Feb. 27, 1989 at 10–11. Before the agents "return such cars, however, [they] must do a complete inventory of the car." *Id.* Agent Bushendorf corroborated this testimony and added that once a vehicle has been seized, the agents "go through the vehicle thoroughly and ... separate out any items that are of evidentiary value as opposed to those of a personal nature." Reporter's Transcript, April 4, 1989, at 9. Any containers found within the vehicle are searched. *Id.* The procedures followed in the case of rental cars are identical to those found in DEA Manual section 6654.24(D) regarding the search of cars seized for forfeiture. *Id.* at 12. We are satisfied that DEA's oral policy governing inventory searches of seized rental vehicles is sufficiently standardized.

B

Appellants next contend that the inevitable discovery doctrine does not apply here because the government never showed that the DEA would have acquired lawful custody of the station wagon before conducting an inventory search. "[B]efore an inventory search is permissible, the government must have legitimate custody of the property to be inventoried, either as a result of lawful arrest or by some other method." *United States v. Jenkins,* 876 F.2d 1085, 1089 (2d Cir.1989) (citations omitted).

This argument is meritless. The DEA could properly take custody of the rented vehicle following the arrest of the two suspects. *See id.* Thereafter, the DEA could conduct a lawful inventory search to protect against any danger to the agents or others that may have been posed by the property. *See Bertine,* 479 U.S. at 372, 107 S.Ct. at 742–42. The district court correctly noted that:

Defendants seem to wish that the DEA would leave such a vehicle completely untouched, for a rental agency to come and take, so that it can be put back into service. In *Illinois v. Lafayette,* [462 U.S. 640] 103 S.Ct. 2605, 2609 [77 L.Ed.2d 65] (1983), the court held that protection of the police from dangerous instrumentalities carried by arrestees justified inventory searches. The risks to a rental car agency employee, or even worse, to a member of the public who subsequently rents the car, is [*sic*] much greater. Such a person would lack the training possessed by police officers in the handling of dangerous instrumentalities.

Order on Defendant's Motion for Reconsideration at 7 (Oct. 30, 1989); *see also Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097; *Feldman,* 788 F.2d at 552 ("a broader approach to inventory search requirements is appropriate where public safety is involved").

C

Appellants finally suggest that the district court erred in determining that the DEA policy required searching all closed containers.[2] For this additional reason, they argue, the incriminating evidence would not have been inevitably discovered.

We disagree. Agent Bushendorf testified that the DEA policy required that containers found in vehicles be searched. This testimony squares with Bushendorf's other testimony that the procedures used for rental cars are identical to those used for vehicles that would be forfeited. The written forfeiture procedures state that "[u]pon seizing the conveyance, it must be thoroughly searched including opening all containers within the conveyance to inven-

---

**2.** We note that the Supreme Court has never imposed such a requirement for an inventory search to be valid. *Compare Bertine,* 479 U.S. at 374 n. 6, 107 S.Ct. at 742 n. 6 (plurality opinion) (acknowledging no such requirement) *with Bertine,* 479 U.S. at 376–77, 107 S.Ct. at 743–44 (Blackmun, J., concurring) ("it is permissible for police officers to open closed containers in an inventory search only if they are following standard police procedures that mandate the opening of such containers in every impounded vehicle").

tory its contents." DEA Manual § 6654.24(D).[3]

AFFIRMED.

---

**3.** Because we conclude that the district court did not err in finding that the evidence sought to be suppressed would have been inevitably discovered during a lawful inventory search, we need not consider whether some other exception to the warrant requirement also applies in this case.