UNITED STATES of America,

v.

**Hector R. FERNANDEZ, Defendant.**

**Crim. No. 93–18–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 8, 1993.

Kevin M. Comstock, Asst. U.S. Atty., Norfolk, VA, for USA.

Robert B. Rae, Virginia Beach, VA, for defendant.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on defendant's motion to suppress evidence, specifically a handgun, discovered by the police when they arrested defendant on charges of murder and use of a firearm. For the reasons as set forth herein, the court DENIES defendant's motion.

### Facts

In the early morning hours of November 14, 1992, the police, during their investigation of a shooting death, received information from two eyewitnesses to the shooting that defendant, Hector R. Fernandez, fired the shots that killed the victim. Consequently, the police secured an arrest warrant for defendant on charges of murder and the use of a firearm. The eyewitnesses also related to the police the two locations where defendant could probably be found: the Quality Inn Motel, located at 719 East Ocean View Avenue in Norfolk, and an apartment complex located at 1301 East Ocean View Avenue in Norfolk. Shortly thereafter, the police set up surveillance at these two locations.

Upon arriving at the Quality Inn, the police espied the car in which the defendant allegedly departed the murder scene, a white Mercury. Soon thereafter, the police sighted a person who matched the defendant's description. This person, who subsequently proved to be the defendant, was accompanied by a young girl and he was carrying a large burgundy bag with black handles. The police watched as defendant proceeded to room 103 where he knocked on the door, which was then opened from the inside to admit him. At this point, the police gained entrance to the hotel room and arrested the defendant.

At the time of his arrest, the burgundy bag, which was closed, was situated approximately two feet from defendant's feet. Three other people, an adult male named Robert Mattei, an adult female named Jackie Gonzales, and the young girl, who was the defendant's daughter, were also in the room at this time. The police ordered defendant to face the wall, whereupon his hands were cuffed behind him and the police advised him of his *Miranda* rights. While plaintiff was stationed against the wall, the burgundy bag was approximately four feet from him.

Shortly before or after the police removed plaintiff from the hotel room,[1] Detective Williamson arrived at the scene. Concerned about the safety of the other officers, Williamson opened the defendant's bag, which upon cursory inspection was found to contain a handgun and some clothes. Williamson stated that he was concerned about officers' safety because two unknown people were still at liberty to move about the room. Some-

---

1. This point was not sufficiently clarified at the suppression hearing. However, it does not affect the court's decision.

time thereafter, Detective Williamson placed the bag in the trunk of his car, transported it to the police station, and gave it to Detective Riley, who inventoried its contents. Inside the bag, Riley found, among other things, a Raven .25 caliber automatic handgun, Model MP–25, and a quantity of "crack" cocaine. As a consequence of discovering the "crack" cocaine and the handgun, the federal government initiated this prosecution against defendant Fernandez for possession of "crack" cocaine with the intent to distribute, and for using and carrying a firearm during a drug trafficking offense, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1), respectively.

The defendant moved to suppress the introduction of the handgun as evidence at trial, arguing that it was first discovered in a manner that violated his Fourth Amendment rights.[2]

### Discussion

Defendant asserts that the search of his closed bag at the scene of his arrest violated his Fourth Amendment rights, because it did not constitute a valid search incident to an arrest. At the suppression hearing, he argued that the factual predicate for a search incident to an arrest, a concern for the safety of the arresting officers, expired when the officers handcuffed him. According to the defendant, this fact, coupled with the fact that the bag was closed, obviated the need for an incident search of his bag. While defendant's argument is not without some merit, the court will "short circuit" discussion of the validity of the search as a search incident to arrest. Instead, because the court finds that the contents of the bag inevitably would have been discovered pursuant to the subsequent inventory search, the court DENIES defendant's motion to suppress.

This court relies primarily on the Supreme Court's holding in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

In *Nix*, the Court ruled that if the prosecution can establish by a preponderance of the evidence that evidence obtained via an illegal search ultimately or inevitably would have been discovered by lawful means, the evidence is admissible at trial. *Id.* at 444, 104 S.Ct. at 2509. The Court stated that the "exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." *Id.* at 446, 104 S.Ct. at 2510. On the contrary, its exclusion "would operate to undermine the adversary system by putting the State in a *worse* position than it would have occupied without any police misconduct." *Id.* at 447, 104 S.Ct. at 2511.

Based on *Nix*, this court finds that even assuming that the gun in defendant's handbag was first uncovered pursuant to an illegal search, it inevitably would have been discovered as a result of the inventory search subsequently conducted by Detective Riley. The defendant does not dispute that the police were constitutionally permitted to take his bag into custody and inventory its contents.[3] Thus, the only inquiry is whether it was more likely than not, *see Bourjaily v. United States*, 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987) (parenthetically restating holding of *Nix v. Williams*, as "inevitable discovery of illegally seized evidence must be shown to have been more likely than not"), that the police would have taken defendant's bag into custody and inventoried its contents had they not seen a gun within the bag at the time of the arrest.

At a threshold level, the court finds by a preponderance of the evidence that the police would have taken defendant's bag into custody, even if there had been no illegal search. The evidence adduced at the hearing established that the bag belonged to the defendant. First, he was seen carrying it prior to the time he entered the hotel room. Second, upon entering the room, the police saw the bag situated no more than two feet from the

**2.** At the suppression hearing, defendant's counsel conceded that the police were constitutionally permitted to take defendant's bag into custody and inventory its contents. Counsel also conceded that the inventory search was conducted in accordance with police department policy. Thus, other than the handgun, the evidence discovered in the bag pursuant to the inventory search was clearly admissible at trial. Consequently, he withdrew his objection to the introduction of the "crack" cocaine discovered through the inventory search.

**3.** *See supra* note 2.

defendant suggesting that he was still exercising dominion and control over it. Furthermore, the police could not have left the bag within the room for it was a hotel room, not the defendant's private residence. Consequently, the court concludes that it was more probable than not that the police would have seized the bag incident to defendant's arrest and taken it to the police station absent the discovery of the gun.

Detective Riley then testified that it was the policy of the Newport News police department to inventory all items, including the contents of bags, seized with a person when he or she is arrested. He stated that the rationale behind the policy was twofold: first, to protect the police department against theft claims by arrestees; and second, to ensure that bags do not contain explosives, chemicals, or weapons capable of injuring police personnel handling and storing the evidence. Accordingly, the court finds by a preponderance of the evidence that the gun inevitably would have been discovered by the police during the inventory search, and thus DENIES defendant's motion to suppress the handgun obtained as a result of his arrest on November 14, 1992.

This court's holding accords with the case law subsequent to *Nix*. *See, e.g., United States v. Mancera–Londono*, 912 F.2d 373, 375 (9th Cir.1990) (evidence found in illegal search of legally seized vehicle admissible where government shows "the incriminating evidence would have been lawfully discovered pursuant to an inventory search of the vehicle"); *United States v. McConnell*, 903 F.2d 566, 570 (8th Cir.1990) (search of unlocked briefcase conducted after arrestee handcuffed was illegal because of arrestee's inability to access the briefcase, but contents of the briefcase were admissible because "the search of the briefcase would have been inevitable pursuant to the ... police policy of inventorying the contents of seized baggage belonging to arrested persons"); *United States v. Whitehorn*, 813 F.2d 646, 650 n. 4 (4th Cir.1987) ("[T]he premise of the inevitable discovery doctrine is that the illegal search played no real part in discovery of incriminating evidence. Only then, if it can be shown that the taint did not extend to the second search, would the product of the second search be admissible."); *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir.1986) (even if search of defendant's garment bag not a lawful search incident to valid arrest an hour earlier, evidence admissible under "inevitable discovery" rule, as "it is normal DEA procedure to inventory defendant's possessions, including a garment bag, at the time of booking").

The Clerk is DIRECTED to send a copy of this opinion and order to all counsel of record.