USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1175 UNITED STATES OF AMERICA, Appellee, v. PEDRO INFANTE-RUIZ, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Aldrich and Campbell, Senior Circuit Judges. _____________________ ____________________ Laura Maldonado Rodriguez, Assistant Federal Public Defender, ___________________________ with whom Benicio Sanchez Rivera, Federal Public Defender, was on _______________________ brief for appellant. Jose A. Quiles-Espinosa, Senior Litigation Counsel, with whom _________________________ Charles E. Fitzwilliam, United States Attorney, was on brief for the ______________________ United States. ____________________ January 25, 1994 ____________________ CAMPBELL, Senior Circuit Judge. Defendant- ____________________ appellant Pedro Infante Ruiz was indicted in the United States District Court for the District of Puerto Rico for having knowingly received while a fugitive from justice a firearm transported in interstate commerce. 18 U.S.C. 922(g)(2) and 924(a). After the district court denied a motion in limine to suppress evidence, Infante entered a plea of guilty, with his plea being conditioned on the outcome of an appeal of the court's evidentiary ruling. Infante duly appealed, and we now reverse the district court's denial of a motion to suppress and vacate appellant's conviction. I. On October 8, 1991, Infante and two associates were driving a rented 1991 Mazda 626 in the vicinity of Parguera, Lajas, Puerto Rico, when they stopped to buy food at a local eatery. Officers of the Puerto Rico police were following the car, looking for an opportunity to arrest Infante on an outstanding warrant from Florida on federal narcotics charges. After the car stopped, the officers surrounded the vehicle and placed Infante under arrest. Infante resisted but was eventually restrained and placed inside a nearby unmarked squad car. One of the arresting officers, Sergeant David Padilla Velez, asked the driver of the car, a Felipe de la -2- Paz, for consent to search the vehicle. De la Paz verbally gave his consent, and Sgt. Padilla searched the passenger compartment. Sgt. Padilla then asked de la Paz for the key to the car's trunk. Although Sgt. Padilla did not explicitly ask for de la Paz's consent to search the trunk, de la Paz handed over the key to the trunk in response to the request and stood by without objection as the trunk was being searched. Two briefcases, one brown and one black, were inside the trunk. De la Paz, upon inquiry by Sgt. Padilla, said that he was the owner of the brown briefcase. Sgt. Padilla opened and searched the brown briefcase, apparently without objection by de la Paz. Sgt. Padilla then asked de la Paz who owned the black briefcase. De la Paz answered that it belonged to Infante. Without expressly asking for de la Paz's consent, but without any express objection from him, Sgt. Padilla then opened the unlocked briefcase belonging to Infante. Inside were various documents belonging to Infante, as well as items belonging to de la Paz and others. Also inside was a loaded .22 caliber Derringer pistol. Infante was later charged with knowingly receiving while a fugitive from justice a firearm transported in interstate commerce. De la Paz and the other passenger were not arrested. -3- Infante moved to suppress the gun, arguing that it had been seized in violation of the Fourth Amendment. In an oral ruling, the district court denied the motion to suppress. The defendant later pleaded guilty to the charge, reserving his right to appeal from the court's denial of his motion to suppress. We now hold that the search of Infante's briefcase was unlawful and that the pistol should have been suppressed. II. The district court upheld the warrantless search of Infante's briefcase on four grounds: (1) Infante's lack of privacy interest in the suitcase; (2) probable cause; (3) a finding that the weapon would have been inevitably discovered; and (4) the drivers' consent. In reviewing a district court's denial of a suppression motion, we uphold its findings of fact unless they are clearly erroneous. United States v. Sanchez, 943 F.2d 110, 112 (1st Cir. 1991); _____________ _______ United States v. Cruz Jimenez, 894 F.2d 1, 7 (1st Cir. 1990). _____________ ____________ The court's ultimate conclusion, however, is subject to plenary review, Sanchez, 943 F.2d at 112; United States v. _______ ______________ Curzi, 867 F.2d 36, 42 (1st Cir. 1989), as "[f]indings of _____ reasonableness . . . are respected only insofar as consistent with federal constitutional guarantees." Ker v. California, ___ __________ 374 U.S. 23, 33 (1963). We will, "where necessary to the determination of constitutional rights, make an independent -4- examination of the facts, the findings, and the record so that [we] can determine for [ourselves] whether in the decision as to reasonableness the fundamental i.e., ____ constitutional criteria . . . have been respected." Id. ___ at 34. Applying these principles, we discuss in turn each of the grounds for upholding the search offered by the district court. A. Infante's Privacy Interest in the Briefcase ___________________________________________ The district court found that Infante had no privacy interest in the briefcase and concluded that the lack of such an interest provided a sufficient basis to deny the suppression motion. The district court found that Infante had left the unlocked briefcase in the trunk of the Mazda for a period of some days, even when he was not a passenger, and that he allowed de la Paz and others to place possessions of their own inside it. The district court found that the briefcase "was not under the control of the defendant" and that Infante had no Fourth Amendment privacy rights that could have been violated by its search. While the district court cited no authority, the best analogy we could find for the district court's reasoning is California v. Greenwood, 486 U.S. 35 (1988). There, the __________ _________ police searched without a warrant the contents of garbage bags left at the curb outside the defendants' home. The -5- Court held that the defendants "exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection." Id. at 40. It was "common knowledge," said the ___ Court, that garbage bags left for pick up are "readily accessible to animals, children, scavengers, snoops, and other members of the public." Id. (footnotes omitted). The ___ defendants were considered to have left their refuse "in an area particularly suited for public inspection and . . . consumption, for the express purpose of having strangers take it." Id. at 40-41 (internal quotation omitted). ___ The facts in this case, however, are clearly distinguishable from Greenwood. Storing items inside a _________ closed briefcase inside a locked car trunk did not reveal a willingness on the part of Infante to "expose" such items to the public. Moreover, nothing in the circumstances indicated that Infante had abandoned the briefcase, relinquished authority over it, or left it open to "public inspection and consumption." De la Paz's identification of the briefcase as belonging to Infante indicated that, among his friends, the case was still believed to belong to Infante. While there is evidence that Infante's confederates felt entitled to place items of their own within it, he did nothing to indicate its availability to the public generally nor did his actions betray an intention to forego an owner's normal right to exclude those he wished to exclude. By the time of the -6- search, Infante himself was once more a passenger in the car carrying his briefcase. We think it is clear, therefore, that Infante did not repudiate his privacy interest in the briefcase by placing it in the trunk of the Mazda. While he indicated a willingness to share access with a few friends, he in no way opened the case to public access. We therefore hold that Infante had a privacy interest in the briefcase and that the district court's finding to the contrary was in error. B. Probable Cause ______________ The district court also concluded that the search was justified by probable cause. It is now established that if the police have probable cause to believe that either a vehicle or a container within a vehicle contains contraband, evidence of crime, or other matter that may lawfully be seized, no Fourth Amendment violation occurs when the police open and search the container without a warrant. United ______ States v. Ross, 456 U.S. 798 (1982); California v. Acevedo, ______ ____ ______________________ 111 S. Ct. 1982 (1991). The district court found here that because Infante was a federal fugitive and that the other occupants were allegedly under suspicion for trafficking in drugs, the police officers could have reasonably believed that the car's occupants were "dangerous people" and that contraband or weapons would be in the automobile. The -7- district court supported its finding by saying it was "conventional wisdom" that "drug traffickers carry weapons." But in order for probable cause to search to exist, the officer must have reasonably trustworthy information of supporting facts and circumstances such as would persuade a person of reasonable caution to believe the search is justified. 3 Charles Alan Wright, Federal Practice and Procedure: Criminal 2d 662 at 579 (1982). Certainty is not required. Id. But in the absence of supporting facts, the ___ officer's suspicion or personal belief that probable cause exists is not enough. Id. at 582. Thus it was not enough ___ here that the suspected vehicle contained persons with serious drug trafficking records. There had to be particular facts indicating that, at the time of search, the vehicle or a container within it carried contraband, evidence of crime, or other seizable matter. Id. at 2664. ___ The government conceded at oral argument that the police officers who conducted the search had no concrete information that Infante and his friends were transporting drugs or weapons at the time of the stop. The probable cause standard could not be satisfied merely by dependence on "conventional wisdom" or by the "dangerous" reputation of Infante and his associates.1 See United States v. Harris, ___ _____________ ______ ____________________ 1. A related argument for upholding the search, which the government did not press below and waived on appeal, was that the search was justified as incident to Infante's lawful -8- 403 U.S. 573, 582 (1971) (suspect's reputation, standing alone, is insufficient to support probable cause). ____________________ arrest under the warrant. New York v. Belton, 453 U.S. 454, _________ ______ 457, 460 (1981). Under Belton, when a police officer makes a ______ lawful custodial arrest of the occupant of an automobile, the officer may, "as a contemporaneous incident of that arrest," search the car's passenger compartment and any containers found within it. Id. at 460-61 & n.4. The "passenger ___ compartment" has been interpreted to mean those areas reachable without exiting the vehicle and without dismantling door panels or other parts of the car. See Wayne R. LaFave & ___ Jerold H. Israel, Criminal Procedure 3.7 at 277 (1984). ___________________ The Belton doctrine has thus been extended to allow ______ warrantless searches of the rear section of a station wagon and the trunk area of a hatchback, when these areas are accessible from inside the vehicle. United States v. Pino, _____________ ____ 855 F.2d 357, 364 (6th Cir. 1988) (station wagon), cert. _____ denied, 493 U.S. 1090 (1990); United States v. Russell, 670 ______ _____________ _______ F.2d 323, 327 (D.C. Cir.) (hatchback), cert. denied, 457 U.S. ____________ 1108 (1982). The Supreme Court in Belton expressly excluded trunks ______ from its holding, 453 U.S. at 460-61 n.4, as the Court may have assumed that all car designs were such as to prevent passengers from reaching into the trunk from the back seat and seizing a weapon or evidence there. In the instant case, however, the vehicle was a 1991 Mazda 626 sedan, which appears to have had a divided rear seat permitting one or both segments to be lowered, allowing direct access to the trunk from the passenger compartment. See Road Test: Sedans, ___ _________________ 56 Consumer Reports 475 (1991). If this was the design, there may have been little difference for purposes of the Belton doctrine between a trunk of the Mazda and the rear ______ portion of a station wagon or the rear compartment of a hatchback. But as the government failed to make this argument either below or on appeal, and as the record is entirely without evidence as to how accessible the Mazda's trunk may have been to persons seated within the car, we do not reach the novel question of whether Belton should be ______ extended in this way. -9- C. Inevitable Discovery ____________________ As a third ground for denying the suppression motion, the district court found that the Derringer pistol would have been inevitably found. According to the district court, because the Mazda was a rental car, the officers would have taken custody of the car, and the car would have had to be inspected before the vehicle was returned. The gun inevitably would have been found in the inspection of the vehicle. On the present record, however, this argument is unsupported and must be rejected. The inevitable discovery doctrine, an exception to the exclusionary rule, applies when "the government can prove that the evidence would have been admitted regardless of any overreaching." Nix v. Williams, 467 U.S. 431, 447-48 (1984). ___ ________ The government bears the burden of showing, by reference to "demonstrated historical facts" and by a preponderance of the evidence, that the information or item would inevitably have been discovered by lawful means. Id. at 444-45 & n.5. ___ Furthermore, to be permissible under the Fourth Amendment, warrantless inventory searches must be conducted according to standardized procedures. South Dakota v. _____________ Opperman, 428 U.S. 364, 372-75 (1976); Colorado v. Bertine, ________ ________ _______ 479 U.S. 367, 374 n. 6, 375 (1987); Florida v. Wells, 495 _______ _____ U.S. 1, 4-5 (1990). Any "discretion [must be] exercised according to standard criteria and on the basis of something -10- other than suspicion of criminal activity." Bertine, 479 _______ U.S. at 375. The government cites United States v. Mancera- ______________ ________ Londo o, 912 F.2d 373, 375-77 (9th Cir. 1990), in support of _______ its argument here. In Mancera-Londo o, the Ninth Circuit _______________ upheld a warrantless search of several suitcases found in a rented station wagon, after the arrest of two suspects who had been using the car to transport drugs. The court held that it was "legitimate" for the DEA agents involved in the arrest to take custody of the vehicle after the arrest of the two suspects, as apparently no one else was available to return the car to the rental company. Id. at 376. ___ The agents in Mancera-Londo o testified that after _______________ a rented vehicle is seized, the DEA's standard policy was to return the car to the rental agency after "a complete inventory of the car." The policy, though oral only, was, according to testimony, identical to the policy found in the DEA Manual regarding the search of cars seized for forfeiture. Id. at 375-76. Also, the agents testified that ___ DEA policy required searching of all closed containers. Id. ___ at 376. See also Wells, 495 U.S. at 4-5 (in order to justify ________ _____ searching closed containers during an inventory search, officers must be acting pursuant to a specific policy regarding closed containers). -11- In the present case, however, the record is barren of evidence that would support the district court's finding that the discovery of the gun was inevitable. First, the government has not met its burden of showing that the officers could have taken "legitimate custody" of the vehicle but for the discovery of the gun, see United States v. ___ _____________ Jenkins, 876 F.2d 1085, 1089 (2d Cir. 1989), and that the _______ officers indeed would have taken such custody inevitably. See United States v. Silvestri, 787 F.2d 736, 744 (1st Cir. ___ _____________ _________ 1986) (noting that a "basic concern" in inevitable discovery cases is whether both the discovery of the legal means and the use of that means are truly inevitable), cert. denied, _____________ 487 U.S. 1233 (1988). In Mancera-Londo o, both persons _______________ connected with the vehicle were arrested. Here, however, only Infante a passenger was arrested. Insofar as appears, the police were not compelled by the mere discovery and arrest of Infante to seize the car within which he was riding and return it to the rental company. There was no testimony, and no evidence otherwise, that the car would have been impounded or seized if the gun had not been found, or that without impoundment the car would have otherwise remained on the side of a public highway or city street. See ___ United States v. Ramos-Morales, 981 F.2d 625, 626 (1st Cir. ______________ _____________ 1992), cert. denied, 113 S. Ct. 2384 (1993). ____________ -12- Second, the government failed to introduce any evidence that their actions were controlled by established procedures and standardized criteria, as required by Opperman, Bertine, and Wells, supra. No officer testified ________ _______ _____ _____ that a policy dictated that they seize the car, search its contents including closed containers, and return it to the rental agency. The government did not introduce into evidence a written policy to that effect, nor did any officer testify that an oral policy or established routine existed. Though no officer testified that regulations directed the making of an inventory search, one officer did testify that certain regulations governed how inventory searches were to be conducted when they in fact were performed. The officer testified that the regulations required the officers to keep a list of everything seized from the vehicle. When asked if he had followed such regulations in this case, however, the officer testified that he had not. The inventory list that was introduced at trial did not list the gun. In the absence of specific evidence of standardized procedures making inevitable the seizure of the car, the search of the trunk, and the opening of the closed briefcase, and in light of the fact that the officers on the scene failed to comply with the established regulations that did exist, we hold that the government failed to carry its burden -13- of showing that the gun would have been inevitably discovered. D. Consent _______ The government argues on appeal that the evidence and the court's findings indicate that the driver of the Mazda, de la Paz, consented to the search of Infante's briefcase. While there was no evidence that de la Paz consented to a search of Infante's briefcase specifically, the district court felt it "a reasonable conclusion that when the police searched the trunk or asked permission to Freddie [de la Paz] to open the trunk . . . there was consent to open the trunk . . . ." From this the government would have us infer de la Paz's consent to search Infante's closed briefcase located within the trunk. While the question is close, we are unable to find that de la Paz consented to the briefcase search. The evidence shows that de la Paz had access to the briefcase for several days and that de la Paz's property was co-mingled with Infante's inside the briefcase. It appears, therefore, that de la Paz had sufficient authority over the briefcase to consent to its search if he in fact had chosen to do so. See Frazier v. Cupp, 394 U.S. 731 (1969) (owner of ___ _______ ____ duffel bag, in allowing friend to use bag jointly and in leaving it at friend's house, assumed risk that friend would consent to its search); United States v. Matlock, 415 U.S. _____________ _______ -14- 164 (1974) (search of diaper bag in bedroom closet permissible when based on consent of one with common authority over bedroom); cf. United States v. Welch, 4 F.3d ___ _____________ _____ 761, 764 (9th Cir. 1993) (one occupant of rental car had no authority to consent to search of another occupant's purse where there was no evidence of joint access to or shared control over the purse). It was not reasonable, however, for the police officers to have believed that de la Paz gave his consent to the search of Infante's briefcase. Under Florida v. Jimeno, _______ ______ 500 U.S. 248, ___, 111 S. Ct. 1801, 1803 (1991), a Fourth Amendment violation occurs when it is not "objectively reasonable" under the circumstances for a police officer to believe that the scope of a suspect's consent permitted the officer to open a particular container within a car. In Jimeno, the driver's general consent to search the vehicle ______ was found sufficient to authorize the search of a paper bag on the floorboard containing cocaine. The Court held that it was objectively reasonable for the officer to believe that the suspect's general consent to search the car included his consent to search containers within the car that might contain drugs. Id. at 1804. The Court noted that the ___ officer had informed the suspect that he was under suspicion for carrying narcotics, and that the suspect had not placed any explicit limitation on the scope of the search. Id. ___ -15- The instant case is distinguishable on its facts from Jimeno. Unlike Jimeno, Sgt. Padilla did not notify de ______ ______ la Paz that he was looking for drugs, making it somewhat more difficult to impute to de la Paz consent to search every container within the car that might contain drugs. Moreover, Infante's briefcase was secured inside the locked trunk rather than lying on the floorboard. Cf. id. at 1804 ("It is ___ ___ very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag."). Still, were the above the sole distinctions, Jimeno ______ would seem to allow a finding of consent. Infante's arrest warrant related to drug-dealing and de la Paz' furnishing of the keys to the trunk is consistent with granting permission to search within the trunk. What leads us to hold that the scope of de la Paz's consent did not include defendant's ___ briefcase, is that de la Paz's general permission to search the car and its trunk was qualified by de la Paz's further statement to the officer, before the latter opened and searched the briefcase, that the briefcase belonged to Infante. Even though Infante was nearby, handcuffed in the squad car, the police officers never sought his permission to search his briefcase. We do not think that it was "objectively reasonable," in these circumstances, for the -16- officer to believe that de la Paz's prior consent to search the vehicle and its trunk encompassed opening that particular briefcase, later clearly identified by de la Paz as belonging solely to another nearby passenger. De la Paz's identification of the briefcase as belonging to another nearby passenger suggested precisely the contrary. See ___ Jimeno, 111 S. Ct. at 1804 ("A suspect may of course delimit ______ as he chooses the scope of the search to which he consents."). At very least, the scope of de la Paz's consent was ambiguous an ambiguity that could have been but was not clarified by further inquiry of de la Paz, Infante or both. -17- III. As none of the grounds offered to uphold the search of the briefcase survives analysis, appellant's motion to suppress the fruits of the search should have been granted. The district court's denial of appellant's motion to suppress is reversed and the judgment vacated. The defendant may withdraw his plea of guilty below. So ordered. __________ -18-