**UNITED STATES of America, Plaintiff,**

v.

**Luis COLON OSORIO, Defendant.**

**Crim. No. 93–040 (JAF).**

United States District Court,
D. Puerto Rico.

Sept. 30, 1994.

Miguel Pereira, Asst. U.S. Atty., Guillermo Gil, U.S. Atty., San Juan, PR, for plaintiff.

Luis Abreu–Elias, San Juan, PR, for defendant.

## *OPINION AND ORDER*

FUSTE, District Judge.

The court held a hearing on the defendant's request to suppress a post-arrest statement and the fruits of a warrantless search of defendant's vehicle. Having considered the record and documents on file, the testimony of the witnesses and the applicable law, the court grants the defendant's motion to suppress the post-arrest statement and orders the suppression of the fruits of the warrantless search of defendant's vehicle.

### I.

#### *Introduction*

On March 17, 1992, Luis Colón–Osorio, a federal fugitive, was arrested in Río Piedras, Puerto Rico by agents of the Federal Bureau of Investigation. Earlier that day, the FBI received information regarding the whereabouts of the defendant in the vicinity of the Crystal House Condominium and the San Francisco Hospital in De Diego Avenue, Río Piedras, P.R. A Toyota 4Runner vehicle previously identified as used by the defendant, was spotted parked in front of the condominium by a team of agents. The agents flattened a tire and when Colón–Osorio proceeded to change the flat tire, he was tackled down by two agents. A brief scuffle ensued, but he was immediately handcuffed and placed under arrest.

During the pre-arrest scuffle, the arresting agents felt that the defendant was trying to reach his waist as if looking for an object and they suspected he had a weapon. Another agent who was providing backup for the arresting agents spotted a pistol within defendant's arm's length on the grass in the sidewalk's planting strip. Upon noticing the firearm, the agent asked his colleagues to account for their weapons and immediately picked the same. The attending agents verified that no one had lost a service weapon, and one of them identified the firearm as a Browning pistol that is not government-issued. In a split second action, one the arresting agents asked Mr. Colón–Osorio whether the Browning pistol was his weapon. One agent immediately expressed that "it was his", referring to the defendant. The

interrogating agent's question was answered by the defendant with an assenting gesture.

The defendant now seeks to suppress the non-verbal admission. The uncontroverted testimony shows that in the short time that elapsed between the arrest and the posing of the single question, no *Miranda* warnings were given.

The defendant was transported to the Federal Building in Hato Rey, Puerto Rico and the Toyota 4Runner was towed to the building's secured parking lot that same evening. Prior to the towing and after the arrest, FBI agents removed from the Toyota 4Runner a vinyl briefcase that the defendant had placed in the passenger seat when he attempted to depart the area and before he discovered and tried to change the flat tire. After the vehicle arrived at the Federal Building, a search took place of both the vehicle and the briefcase. Within the briefcase, the agents found among other things, pistol clips and ammunition. Although not clear from the testimony reviewed at the suppression hearing, we accept the government's proffer to the effect that a grenade was discovered on the morning of March 18, 1992, while the agents were preparing an inventory of seized property. The grenade was inside the briefcase. *See* Government's Reply Memorandum filed on September 19, 1994, *Docket Document No. 136* at 4. The defendant seeks to suppress the fruits of the search.

## II.

### *Summary of the Parties' Contentions*

The government claims that the non-verbal statement elicited from the defendant should not be suppressed because the same was the product of the split second occurrences from the arrest to the questioning and that the otherwise spontaneous attempt to identify the owner of the weapon falls within the *Quarles* exception to the Fifth Amendment, which guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government argues that "public safety" considerations would have entitled the agents to ask if the defendant had any other weapons hidden in his proximity and that such entitlement validated the specific question regarding the Browning pistol. The defendant claims that once he was handcuffed and arrested, and the situation was under the control of the FBI, the *Miranda* warnings were a prerequisite to any custodial interrogation.

Regarding the hand grenade, the pistol clips and the ammunition, the government claims that the search leading to the discovery of such items was done with probable cause incidental to a lawful arrest and that it was a valid warrantless search. The government alleges that the vehicle was not registered to the defendant, that they saw him place the briefcase in the vehicle just before his arrest, and that it was proper and lawful to retrieve it after the arrest and account for its contents. The government also claims that agents were justified in searching the vehicle and the briefcase after they removed both objects from the scene of the arrest and after their arrival at the Federal Building. Lighting conditions at the scene of the arrest and the crowd gathering around, made it impractical to conduct the search at the arrest scene. The prosecution also points out that the agents were aware that the defendant is a convicted felon and a known member of "Los Macheteros", a clandestine Puerto Rican terrorist group which has claimed responsibility for armed robberies and terrorist bombings. The agents were also aware of the fact that Colón–Osorio was being sought in connection with the 1983 armed robbery of $7.2 million from the Wells Fargo depot in Hartford, Connecticut. He was also being sought for bond default in 1990 and was known to possess automatic weapons and explosives. The defendant was considered by the FBI to be armed and dangerous. A reward of up to $75,000 was offered for information leading to his arrest or that of his Hartford codefendant Filiberto Ojeda–Ríos. Ojeda–Ríos remains a fugitive to this day. *See Wanted Flyer No. 547 dated February 5, 1991, Defendant's Exhibit 2,* and testimony of Agents Spencer, Roldán, and Fraticelli.

The defendant claims that several factual questions remain unresolved and that the government has failed to comply with its burden of proof in a warrantless search scenario. Colón–Osorio also alleges that the government's attempt to justify the search of March 17 and 18, 1992, which led to the discovery of the pistol clips, ammunition, and grenade, as an inventory search is improper and that the searches and seizures were not incidental to defendant's arrest, but at a different place and time, after defendant was in custody. He also alleges that if the vehicle was indeed searched at the location of arrest, probable cause had to be demonstrated to validate the warrantless intervention.

## III.

### *Chronology of Events*

We first establish the chronology of events by making reference to the surveillance log kept by the FBI for the date in question, March 17, 1992. *Defendant's Exhibit 3* and the testimony of agents Spencer, Roldán, and Fraticelli. At about 1:40 p.m. a group of agents spot-checked the vicinity of the Crystal House Condominium and San Francisco Hospital looking for a white Toyota 4Runner with Puerto Rico license plate 93C302. At about 2:06 p.m. the vehicle in question was found parked in front of the Crystal House Building across from the San Francisco Hospital in the De Diego Avenue, Río Piedras, Puerto Rico, facing east. From that moment until 8:12 p.m., the Toyota was kept in constant surveillance. At about 8:12 p.m., Luis A. Colón–Osorio was observed leaving the condominium and leading directly towards the Toyota 4Runner. The defendant was positively identified by FBI S/A Miguel Aponte–Dávila, who was familiar with the defendant and the Hartford, Connecticut Wells Fargo prosecution. Colón–Osorio was carrying what appeared to be a cloth briefcase, which he allegedly placed in the Toyota's front seat.[1] The agents observed that simultaneously, a Kentucky Fried Chicken delivery truck stopped parallel to the Toyota

facing west and presumably pointed the flat tire to Colón–Osorio. Colón–Osorio opened the driver-side door, entered and exited the vehicle. The agents observed that when he exited the Toyota, he no longer had with him the briefcase. The defendant then walked towards the rear of the vehicle and opened the tailgate in order to pull out the spare tire. At this time, two agents tackled the defendant, and while on the floor, he was handcuffed and arrested. Immediately thereafter a Browning Hi–Power 9mm pistol was found within arm's reach of the defendant.

At about 8:16 p.m., Colón–Osorio was taken away from the area of the arrest and the Toyota 4Runner remained at the original location where the agents retrieved the briefcase located at the passenger seat. The briefcase was seized by the agents and brought to the Federal Building in Hato Rey while the Toyota was simultaneously towed to the same location. This happened at 9:35 p.m.

Custody of the vehicle was transferred to FBI S/A J.M. Gaffney at 10:15 p.m. and a warrantless search of the vehicle and the briefcase was carried out between 10:15 p.m. and 10:30 p.m. *See Defendant's Exhibit 4,* FBI form 302 containing a list of items seized by investigating agents in the search. The court notes that among the items seized, the briefcase, a maroon vinyl carry-on bag/valise is the first item listed. No mention is made of the grenade.

According to the Government's Reply Memorandum filed on September 19, 1994, *Docket No. 136* at 4, the following happened:

Due to darkness and the gathering of a crowd and the incipient unruliness due to the traffic jam, the agent's security concerns caused the removal, by towing, of the Toyota Fourrunner truck to the federal parking lot in Hato Rey. There, they conducted an inventory search of the vehicle which resulted in the seizure of the items described in Docket entry 29. The ammunition charged in the indictment was also

---

1. The defendant filed an affidavit in support of his motion to suppress where he avers that the briefcase was left by him in the Toyota 4Runner when he first parked the vehicle earlier that day.

He denies having carried the briefcase immediately before his arrest. *Docket Document No. 138.*

discovered in additional magazines (clips) for the pistol. These items were taken out of the vehicle for safekeeping and due to the lateness of the hour no other examination was made of them at that time. The next day, March 18, 1992, much to the agent's chagrin, while conducting an inventory of the items enclosed in the maroon satchel/briefcase, a grenade was discovered within a small leather bag inside the briefcase. There were no warrants requested at any time, except on March 19, 1992, when a warrant for the search of the vehicle was requested and authorized. The warrant authorized the search of the vehicle for fingerprints and explosive residue.

## IV.

### *Discussion*

### A. Admissibility of the non-verbal statement

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court extended the Fifth Amendment privilege against compulsory self incrimination to individuals subjected to custodial interrogation by the police. The Court decided that interrogation in certain custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the arrested citizen is specifically informed of his "*Miranda*" rights and freely decides to forego the rights and respond to questions.

■ In *New York v. Quarles*, 467 U.S. 649, 656, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984), the Supreme Court adopted a "public safety" exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence, and the availability of that exception does not depend upon the motivation of the individual officers involved.[2]

In *Quarles*, a suspect was arrested in a supermarket setting. The police had suspicion that just before the arrest, the suspect

had discarded a firearm somewhere in the supermarket, where a third party could gain access to the loaded weapon. The hidden gun posed great danger to the public safety. An accomplice might make use of it, a customer, child, or employee might later come upon it. The Supreme Court allowed the suspect's interrogation without *Miranda* warnings and his answer about the place where he discarded the gun. The *Miranda* warnings would have deterred a sincere response from the suspect. Public safety considerations required the allowance of the question and the answer to save the public from the danger of a discarded weapon in a public place.

■ The situation in this case is quite different from *Quarles*. Although the agent's motivation was honest, the fact remains that Colón–Osorio had been handcuffed and safely arrested. The gun had been seized by the FBI agents and the arrest scene was under the agents' control. The direct and circumstantial evidence pointed to the fact that the Browning pistol was Colón–Osorio's property. Under the circumstances, if there was any need to interrogate the defendant, the interrogation had to be preceded by the *Miranda* warnings and by his decision to forgo his rights. The Government has failed to point out any case in which such interrogation is permissible. As stated in *Quarles*, police officers should determine almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit an admission from a suspect. *Quarles*, 467 U.S. at 658–59, 104 S.Ct. at 2632–33. Here, the only purpose served by the question posed to Colón–Osorio was to elicit an admission. His nonverbal admission was improperly obtained and therefore, must be suppressed.

### B. Admissibility of the Fruits of the Warrantless Search

■ An arresting officer may search the arrestee's person to protect himself, discover and remove weapons and to seize evidence to

---

2. We are certain that the interrogating agent's motivation was honest. In the heat of the mo-

ment, and in a split second, the question was uttered, and an admission was elicited.

prevent its concealment and destruction, and may search an area within the immediate control of the person arrested, meaning the area from which he might gain possession of a weapon or destructible evidence. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The reasonableness of a warrantless search incident to arrest depends upon the facts and circumstances and the total atmosphere of the case. According to *Chimel,* those facts and circumstances must be viewed in light of established Fourth Amendment principles, and the only reasoned distinction is one between (1) search of the person arrested and the area within his reach, and (2) more extensive searches. 395 U.S. at 765–66, 89 S.Ct. at 2041–42.

■ In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court held that when a policeman has made a lawful custodial arrest of the occupant of an automobile he may, **as a contemporaneous incident to the arrest,** search the passenger compartment of the vehicle and may also examine the contents of any container found within the passenger compartment and such container, if capable of folding another object, may be searched whether it is open or closed. The *Belton* exception allowing a warrantless search is governed by the *Chimel* rules outlined above. The search of the arrestee and of his "grabbing area" must serve the purpose of discovering and removing weapons and to seize evidence. These efforts must be directed to prevent concealment and destruction of evidence. If the scene of the arrest offers no such risks, the exception is not triggered inasmuch as the facts and circumstances and the total atmosphere of the situation allows for the achievement of the same goal through traditional means including a search warrant. More extensive searches or beyond the boundaries specifically authorized by *Belton* cannot be justified on the basis of an otherwise legal arrest.

■ The *Belton* doctrine has been interpreted by federal appellate courts as requiring consistency with *Chimel.* In *United States v. Burnette,* 698 F.2d 1038, 1046–50 (9th Cir.1983), the Ninth Circuit reviewed a factual scenario similar in many respects to the one under consideration. The Court of Appeals considered a case where a purse found in a *Belton* vehicle search was searched contemporaneously with the arrest and later subjected to a more thorough search at the police station. As in the case at bar, during the search of the police station, additional evidence apparently not discovered in the initial search was found. The Court of Appeals decided that it is settled Fourth Amendment doctrine that a police officer may, incidental to a lawful arrest, conduct a **contemporaneous** search of the arrestee's person and of the area into which the arrestee might reach to retrieve a weapon or destroy evidence. Containers found within the "grabbing area" may also be searched contemporaneously with the arrest. Where such container is not searched immediately but is taken to the police station and searched later, a warrant is required. *Burnette,* 698 F.2d at 1049. *See also United States v. Monclavo–Cruz,* 662 F.2d 1285 (9th Cir.1981).

■ In the present case, Colón–Osorio's briefcase was not searched immediately upon his arrest in some sort of cursory fashion to be later subjected to a more thorough search at the Federal Building. The testimony received at the suppression hearing and the chronology of events show that S/A Gaffney removed the briefcase and brought it to the Federal Building, and at the Federal Building between 10:15 and 10:30 p.m. March 17, 1992, a search was made of the Toyota vehicle and the briefcase. The Government concedes that it was not until March 18, 1992 that the agents looked more carefully into the various briefcase compartments and found the grenade.

■ While we believe that a search contemporaneous with the arrest would have been valid if the incriminating evidence in the briefcase and vehicle would have been discovered, the subsequent search with no contemporaneous initial search cannot be justified. Accordingly, we adhere to the view that once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted

without a search warrant. If on the contrary, the search is first done in the police station and away from the contemporaneity of the arrest, a search warrant must be obtained for the protection of the individual's privacy interest. In the case where the search is not contemporaneous, the defendant's expectation of privacy in the container survives the exigent circumstances justifying a warrantless search. *Burnette*, 698 F.2d at 1050.[3]

▮▮▮▮ The Government attempts to justify the validity of the search as an inventory search. The First Circuit has decided that such claim requires definite proof that the evidence would have been admitted regardless of any overreaching. *United States v. Infante–Ruiz*, 13 F.3d 498, 503–04 (1st Cir. 1994). The Government bears the burden of showing by reference to the facts that the items would have been inevitably discovered. In addition, to be permissible under the Fourth Amendment, warrantless inventory searches must be conducted according to standardized objective procedures. *Infante–Ruiz*, 13 F.3d at 503. Any discretion must be exercised according to standard objective criteria and on the basis of something other than suspicion. While it is quite easy to justify that the items would have inevitably been discovered, the Government failed to introduce any evidence that their actions were controlled by established procedures and standardized criteria as required by Supreme Court case law. *See Florida v. Wells*, 495 U.S. 1, 4–5, 110 S.Ct. 1632, 1635–1636, 109 L.Ed.2d 1 (1990); *Colorado v. Bertone*, 479 U.S. 367, 374 n. 6, 375, 107 S.Ct. 738, 742 n. 6, 742, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372–75, 96 S.Ct. 3092, 3098–3100, 49 L.Ed.2d 1000 (1976); *Infante–Ruiz*, 13 F.3d at 503. To our surprise, no officer testified that a standard policy dictated that the procedure was to seize the car and its contents, tow it away from the gathering crowds, and transport it to the FBI headquarters for search purposes. As in *Infante–Ruiz*, the Government did not introduce into evidence a written policy covering those aspects. No officer testified that the circumstances of the moment so justified and that at least an oral policy or established routine existed. In the absence of such evidence, the Government failed to carry its burden of showing that the items in question would have been inevitably discovered.[4]

▮▮▮▮ Lastly, the government hints that the seizure can be saved on probable cause grounds. *See Infante–Ruiz*, 13 F.3d at 502. While it was quite easy to establish the defendant's relationship to clandestine terrorist groups and weapons or explosives, *Defendant's Exhibit 2*, in order for probable cause to search to exist, the agents must also have reasonably trustworthy information of supporting facts and circumstances such as would persuade a person of reasonable caution to believe the search is justified. *Infante–Ruiz*, 13 F.3d at 502. Here, the Government stipulated at the suppression hearing having no such information other than the general knowledge on the part of the agents that Colón–Osorio was related to a clandestine terrorist group which had a reputation of using explosives and weapons. No particular facts were at hand, and the lack of contemporaneity between the arrest and the search, only served to reinforce the defendant's Fourth Amendment rights. Suspected reputation, standing alone, is not enough to suggest probable cause. *United States v. Harris*, 403 U.S. 573, 582, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971) and *Infante–Ruiz*, 13 F.3d at 503. The items objects of counts two and three of the indictment are now suppressed.

## V.

### *Conclusion*

The court suppresses the non-verbal statement made by the defendant admitting own-

3. The court notes that the Government's presentation of its side of the story at the suppression hearing did not include testimony of the agents that dealt directly with the search of the vehicle and the briefcase and the subsequent search of March 18, 1992. We have looked into the FBI 302 forms and can only find support for the factual scenario outlined in this opinion and order.

4. The Government cannot claim surprise as to what the court would have expected regarding such specific proof. The *Infante–Ruiz* decision is recent and well known in this district. The defendant's memoranda clearly pointed out the standard and the court prodded the Government, indicating the need of such evidence.

ership and control over the Browning pistol. The court also suppresses the items object of counts two and three inasmuch as they resulted from a search in contravention of Fourth Amendment federal caselaw. The case will be tried on counts 1, 4 and 5.

**IT IS SO ORDERED.**