**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 21 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10525 |
| Plaintiff-Appellee, | D.C. No. CR-15-01299-GMS |
| v. | |
| RUBEN LEE CASTANEDA, | |
| Defendant-Appellant. | MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted April 9, 2018
San Francisco, California

Before: WARDLAW and CLIFTON, Circuit Judges, and KATZMANN,[**] Judge.

After a stipulated facts bench trial, Ruben Lee Castaneda was convicted on September 27, 2016 under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for being a felon in possession of a firearm, and sentenced on December 19, 2016 to 51 months in prison,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

followed by three years of supervised release. Castaneda now appeals, challenging: (1) the district court's decision not to suppress evidence found in his backpack; (2) its finding that he voluntarily waived his Miranda rights; (3) its application of the Sentencing Guidelines; and (4) a condition of his supervised release. We affirm the district court's decision on all challenged issues.

1. The district court did not err in determining that the firearm, ammunition, and other contents of Castaneda's backpack were admissible under the inevitable discovery doctrine pursuant to an inventory search. An inevitable discovery ruling -- which presents a mixed issue of law and fact -- is reviewed for clear error. United States v. Reilly, 224 F.3d 986, 994 (9th Cir. 2000); United States v. Lang, 149 F.3d 1044, 1047–48 (9th Cir. 1998). For the inevitable discovery doctrine to apply in the case of an inventory search: (1) the police must have had legitimate custody of the property to be inventoried, either as a result of lawful arrest or by some other method; and (2) the inventory search must be conducted according to standard agency procedures. United States v. Mancera-Londono, 912 F.2d 373, 375–76 (9th Cir. 1990).

Here, the district court did not err by determining police had legitimately taken custody of the backpack in order to protect it. Castaneda was observed to have the backpack in his possession shortly before his arrest; there was no secure place available to leave the property; and no willing third party was on hand to take

custody of the property. Further, police were not required to seek out a friend or family member to take custody of Castaneda's property. See Illinois v. Lafayette, 462 U.S. 640, 647 (1983) ("The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."). Under these circumstances, the police could lawfully take custody of Castaneda's backpack in order to protect it. See Mancera-Londono, 912 F. 2d at 376 (holding that the rental car entered police custody lawfully when all occupants were arrested and no third party was present).

Nor did the district court err in determining that the inventory search of the backpack was conducted according to standard agency procedures: the officers testified that all arrestees' property was searched and catalogued during the booking process, written policies supported their testimony, and the policies were sufficiently detailed regarding the situation at hand. See Lafayette, 462 U.S. at 648 (holding that it is not "unreasonable for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures") (internal quotation marks omitted). Further, any mixed motives police had for conducting the inventory search do not affect the validity of the inventory search, as the backpack would have been inventoried according to routine procedure regardless. United States v. Bowhay, 992 F.2d 229, 231 (9th Cir. 1993).

2. The district court did not err when it found that Castaneda voluntarily waived his Miranda rights. A district court's finding that a Miranda waiver was knowing and intelligent is a factual finding reviewed for clear error. United States v. Liera, 585 F.3d 1237, 1246 (9th Cir. 2009). The validity of a Miranda waiver is assessed in light of the totality of the circumstances, including the following factors: (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system. United States v. Crews, 502 F.3d 1130, 1140 (9th Cir. 2007).

It is undisputed that Castaneda did not sign a written waiver and that his rights were explained to him only once. It is also undisputed that Castaneda speaks and understands English, and that he had prior experience in the criminal justice system. In light of Castaneda's detailed responses to questions and demeanor throughout most of the interview, the district court did not err by finding that he had sufficient mental capacity at the time of waiver -- regardless of any alleged methamphetamine use or sleep deprivation -- and by giving credence to Castaneda's statement that he understood his rights. See United States v. Rodriguez-Rodriguez, 393 F.3d 849, 855 (9th Cir. 2005) (holding that heroin withdrawal did not render a Miranda waiver

invalid because the defendant "spoke and interacted" during the interview), overruled on other grounds as recognized in United States v. Aguila–Montes de Oca, 655 F.3d 915, 945–46 (9th Cir. 2011) (en banc). Additionally, because the district court did not err by determining that the backpack evidence was admissible, it did not err by finding that Castaneda's statements were not provoked by confrontation with illegally seized evidence.

3. The district court did not err by applying U.S.S.G. § 2K2.1(a)(4)(B) without making the prosecution prove that Castaneda knew that the firearm was a sawed-off shotgun. We review a district court's interpretation of the Sentencing Guidelines de novo, its application of the Guidelines to the facts of the case for abuse of discretion, and its factual findings for clear error. United States v. Garro, 517 F.3d 1163, 1167 (9th Cir. 2008). The plain language of § 2K2.1(a)(4)(B) does not include a scienter requirement, and mens rea is not typically required at the sentencing stage unless a sentencing factor: (1) alters the maximum penalty available for the crime committed; (2) negates the presumption of innocence or relieves the prosecution's burden of proving guilt; or (3) creates a separate offense calling for a separate penalty. McMillan v. Pennsylvania, 477 U.S. 79, 87–88 (1986).

Here, the enhancement for a sawed-off shotgun only affects the minimum penalty, not the statutory maximum of ten years. See United States v. Goodell, 990 F.2d 497, 500 (9th Cir. 1993). Section 2K2.1(a)(4)(B) does not negate the

presumption of innocence or the burden of proof as to the underlying violation of §

922(g), i.e., being a felon in possession of a firearm.  See id. at 500 n.4.  Finally, the

enhancement does not create a separate offense calling for a separate penalty.  See

McMillan, 477 U.S. at 89–90 (holding that Pennsylvania's use of "visible possession

of a firearm" as a sentencing factor did not "transform[] against its will a sentencing

factor into an 'element' of some hypothetical 'offense'").

4. The district court did not commit plain error by requiring Castaneda "to

participate in a mental health program as directed by the probation officer which

may include taking prescribed medication" as a condition of his supervised release.

When, as in this case, a defendant does not object to a supervised release condition

in the district court, we review the district court's decision for plain error.  United

States v. Barsumyan, 517 F.3d 1154, 1160 (9th Cir. 2008).  Plain error is (1) error,

(2) that is plain, and (3) affects substantial rights.  Id.

Although district courts generally have broad discretion in imposing

supervised release conditions, "[w]here [] a particularly significant liberty interest is

at stake, the district court must follow additional procedures and make special

findings."  United State v. Stoterau, 524 F.3d 988, 1005 (9th Cir. 2008) (citing

United States v. Williams, 356 F.3d 1045, 1053 (9th Cir. 2004)).  Forcing an

individual to take certain psychoactive medications constitutes "a 'particularly

severe' invasion of liberty," and thus the district court must make "on-the-record,

medically-grounded findings that court-ordered medication is necessary" and "involves no greater deprivation of liberty than is necessary." Williams, 356 F.3d at 1053–57 (citation omitted).

Here, without making findings on a medically-informed record, the district court required Castaneda to "participate in a mental health program as directed by the probation officer, which may include taking prescribed medication." To pass muster, this condition must be understood as limited to medications that do not implicate Castaneda's significant liberty interests. United States v. Daniels, 541 F.3d 915, 926 (9th Cir. 2008). While he is on supervised release, Castaneda may challenge prescribed medication that he believes, in good faith, implicates his significant liberty interests. Further, he may refuse to take the medication without violating the terms of his supervised release until the district court either rules that the medication does not implicate his liberty interests or makes the required Williams findings.

For the foregoing reasons, we affirm the district court's ruling.

**AFFIRMED**.