STATE

v.

Jose A. PARRA.

No. 2003–619–C.A.

Supreme Court of Rhode Island.

Dec. 18, 2007.

---

Aaron L. Weisman, Providence, for Plaintiff.

Robert B. Mann, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The defendant, Jose A. Parra (defendant), appeals from a judgment of convic-

tion for identity fraud after a jury found him guilty of possessing a document-making implement with the intent to use it to produce a false identification document, in violation of G.L. 1956 § 11–49.1–3. This case came before the Supreme Court for oral argument on December 10, 2007, pursuant to an order directing the parties to appear and show cause why this appeal should not be sustained, the judgment of conviction vacated, and the case remanded to the Superior Court for a new trial on the basis of the state's concession of error. After hearing the arguments and examining the memoranda filed by the parties, we are of the opinion that this appeal should be sustained. For the reasons set forth below, the defendant's judgment of conviction is vacated and the case remanded to the Superior Court, for a new trial.

## I

### Facts and Travel

On January 9, 2002, Detective Michael Winquist (Det. Winquist) of the Rhode Island State Police received a tip from a previously reliable informant that defendant had obtained a large quantity of cocaine and was in the process of distributing it in the Providence area. After checking defendant's criminal record and learning that he had two prior convictions for distributing narcotics, Det. Winquist and other state and local police officers conducted surveillance outside an East Providence apartment that the informant suggested might be connected to defendant.

While conducting this surveillance, Det. Winquist observed a man matching defendant's description emerge from the apartment and get into the rear seat of a minivan driven by Luz Rivera. From their vantage point, the officers also could see that one of the passengers in the minivan was Cesar Ferrera, whom they recognized because of his previous arrests for narcotics and identity-theft. Ferrera was wanted on a federal Immigration and Naturalization Service (INS) warrant.

Detective Winquist and officers from the East Providence Police Department followed the minivan onto Route 195, where it traveled westbound until the officers stopped the vehicle near the Broadway exit. The troopers asked Ferrera to step out of the vehicle, and they immediately placed him under arrest on the active INS warrant.

After arresting Ferrera, and three to four minutes after the minivan was stopped, the officers asked defendant to step out of the vehicle. When he complied, the officers conducted a pat-down search of defendant for weapons, which revealed none. According to Det. Winquist, an officer told defendant that he was not under arrest, but that the officers were conducting an investigation and wanted to question him about information they had received that suggested he might be involved in narcotics distribution.

Although the officers did not restrain defendant, they questioned him about where he lived. After acknowledging that he resided at two different apartments, he provided the officers with his written consent to a search of both apartments—one that he identified as his girlfriend's apartment and one that he said was his own apartment. The defendant accompanied the officers to his apartment and let them inside.

A search of defendant's apartment produced, *inter alia*, $11,000, a digital scale, small plastic baggies, acetone, inositol, two fraudulent Puerto Rican driver's licenses, fraudulent Rhode Island inspection stickers, a laminating machine, and other identification cards. In addition, as the officers searched a computer table in

defendant's apartment for narcotics, the computer mouse moved[1] and engaged the monitor, which revealed a template of a Puerto Rican driver's license with Ferrera's photograph on it. The name appearing on the license, however, was Tomas Soto. Believing that this was a fraudulent license, the officers shut down the computer and seized it.

A forensic examination of the computer was ordered; it revealed a modifiable template of an identification document, in addition to images of an auto body shop, two images of diplomas, an image of an insurance card, an image of two bank checks, images of numerous Rhode Island inspection stickers, images of illegally modified pay stubs, an image of a utility bill, and multiple images of illegally modified title certificates.

On the basis of these facts, defendant was charged by way of criminal information with one count of possession of a document-making implement with the intent to use it to produce a false identification document, in violation of § 11–49.1–3. Before trial, defendant moved to suppress all evidence of property taken from defendant's person or from his home or car, and any statements defendant made.[2] To support his motion, defendant argued, *inter alia*, that there was no basis to stop the vehicle in which he was a passenger, nor was there probable cause or even articulable suspicion to justify his removal from the vehicle. Additionally, he argued that he did not voluntarily consent to a search of the two apartments.

The trial justice denied defendant's motion to suppress. Specifically, he ruled that the initial stop of the vehicle was lawful because the officers knew one of the passengers was a person for whom there was an outstanding warrant. Once the vehicle was stopped, it was permissible to detain the occupants while the officers determined whether there was in fact an outstanding warrant for one of the passengers or whether there was any criminal activity taking place. The trial justice further concluded that it was permissible to ask defendant to step out of the vehicle because Det. Winquist knew defendant had two prior convictions for drug offenses. In the trial justice's opinion, defendant's detention was brief and the search of his person was limited and not intrusive. Finally, the trial justice found that defendant had freely consented to a search of his apartment.

A jury trial thereafter commenced, and the jury found defendant guilty of identity fraud in violation of § 11–49.1–3. On September 17, 2003, he was sentenced to three years suspended, with three years probation. The defendant filed a timely notice of appeal.

## II

## Analysis

On appeal, defendant raises several issues concerning the suppression motion, among which is his allegation that the police had insufficient justification to remove him from the stopped vehicle.[3] Ac-

---

1. Detective Michael Winquist was not asked, nor did he offer an explanation about how the computer mouse moved.

2. The defendant subsequently withdrew that portion of his motion to suppress that pertained to evidence seized from his car.

3. In his brief to this Court, defendant also contends that the trial justice erred in his jury instructions, in admitting drug evidence into the case, and in denying his motion for judgment of acquittal. Because we conclude that the trial justice erred with respect to the suppression motion and remand this case for a new trial, we need not reach defendant's other points of error.

cordingly, it is defendant's argument that his pretrial motion to suppress should have been granted because the identity-fraud evidence that ultimately was used to convict him was the direct product of this unconstitutional detention and seizure.

In its initial briefing to this Court, the state argued that the trial justice properly denied defendant's motion to suppress. The state's initial position was that the officers did not violate any constitutional guarantees against unreasonable searches and seizures by asking defendant, a passenger in a lawfully stopped vehicle, to step out of the vehicle.

Before oral argument, however, the state filed a memorandum conceding error in the denial of defendant's motion to suppress. The state now concedes that defendant, a passenger in a stopped vehicle, has standing to contest the stop. The state also concedes error as to the question of whether defendant's removal from the vehicle was justified. According to the state, if the purpose of the stop had been completed before defendant was asked to leave the vehicle, there was no constitutional justification to seize defendant. In the state's estimation, "[t]he record of the suppression hearing does seem to indicate that, by the time State Police ordered [d]efendant out of the caravan, the federally wanted Ferrera had already been removed from the scene." The state further concedes that consent given during an illegal detention presumptively is invalid. Citing our recent decision in *State v. Casas*, 900 A.2d 1120, 1134 (R.I. 2006), the state notes that a defendant's consent can be deemed valid if it is sufficiently attenuated from the illegal detention to dissipate the taint. However, the state admits that upon the facts of this case it would not have been able to prove that the causal connection between defendant's illegal detention and his consent to

search was broken. For these reasons, the state concedes that because defendant's suppression motion should have been granted, he is entitled to have his conviction vacated and a new trial.

Although it would appear that the state's concession would obviate the need to address the merits of defendant's appeal, we have held that "the state's concession that a conviction should be vacated 'does not automatically govern an appellate court's disposition of an appeal.'" *State v. Smith*, 797 A.2d 1073, 1073 (R.I.2002) (mem.) (quoting *United States v. Vasquez*, 85 F.3d 59, 60 (2d Cir.1996)). Therefore, case law in this state requires that this Court conduct a "thorough, independent review of the evidence," despite the state's confession of error. *State v. Disla*, 874 A.2d 190, 196 (R.I.2005). *See also Sibron v. New York*, 392 U.S. 40, 58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Young v. United States*, 315 U.S. 257, 258–59, 62 S.Ct. 510, 86 L.Ed. 832 (1942).

### A

### Standard of Review

■ When reviewing a trial justice's denial of a motion to suppress evidence, this Court affords deference to a trial justice's findings of historical fact and will overturn such findings only if we conclude that the trial justice clearly was wrong. *State v. Texter*, 923 A.2d 568, 573 (R.I. 2007); *Casas*, 900 A.2d at 1129. We will, however, conduct a *de novo* review of the record and independently consider whether a defendant's rights have been violated. *Casas*, 900 A.2d at 1129.

### B

### Detention

■ It is well established that when a police officer makes a traffic stop, both the driver and any passengers are seized with-

in the meaning of the Fourth Amendment, regardless of the brevity of the stop. *Brendlin v. California,* —— U.S. ——, ——, 127 S.Ct. 2400, 2403, 168 L.Ed.2d 132 (2007); *see also Casas,* 900 A.2d at 1131. The Fourth Amendment does not prohibit all seizures, but rather, requires that every seizure be reasonable. *See State v. Quinlan,* 921 A.2d 96, 106 (R.I.2007) (citing *Whren v. United States,* 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). This Court has held that "an officer can order the driver and passengers to get out of a lawfully stopped vehicle without violating the Fourth Amendment's prohibition against unreasonable searches and seizures." *Id.* at 108 (citing *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) and *Maryland v. Wilson,* 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)).

█ Nevertheless, we have clarified that any "ensuing investigation must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance, so as to be minimally intrusive of the individual's Fourth Amendment interests." *Casas,* 900 A.2d at 1133 (quoting *United States v. Glover,* 957 F.2d 1004, 1011 (2d Cir.1992)). Therefore, "[o]nce the purpose of the stop has been accomplished, a police officer may not detain a suspect and 'embark[ ] upon [an] expedition for evidence in the hope that something might turn up.'" *Id.* (quoting *United States v. Babwah,* 972 F.2d 30, 34 (2d Cir.1992)).

After reviewing the record, we agree with both the state and defendant insofar as they indicate that at the time defendant was questioned, the original purpose of the stop was completed. According to Det. Winquist's testimony, he asked Ferrera to step out of the vehicle, immediately placed him in handcuffs, and arrested him. While an officer took charge of Ferrera, another officer returned to the vehicle and requested a license and registration from the driver. It was not until three or four minutes had passed after the minivan was stopped that defendant was asked to step out of the vehicle. In conducting our *de novo* review, we conclude that at the time Det. Winquist returned and asked defendant to step out of the vehicle, the original purpose of the stop had been completed. Detective Winquist testified that nothing occurred in the interim that led him to believe anything was improper about the vehicle or that defendant was doing anything illegal in the vehicle. Finally, Det. Winquist testified that while detained, defendant had not done anything to alarm the officers. Rather, he stated that the only reason for asking defendant to step out of the vehicle was to conduct a pat-down search for weapons. The search turned up no weapons, and Det. Winquist then proceeded to interrogate defendant. We conclude that this prolonged detention was unlawful.

### C

#### Consent

█ In the ordinary case, it is constitutionally permissible to conduct a search when consent has been given freely and voluntarily. *Casas,* 900 A.2d at 1134 (citing *State v. Hightower,* 661 A.2d 948, 960 (R.I.1995) and *State v. O'Dell,* 576 A.2d 425, 427 (R.I.1990)). In such case, the state must prove by a preponderance of the evidence that the consent indeed was given freely and voluntarily. *Id.* (citing *O'Dell,* 576 A.2d at 427).

█ If, however, the consent is obtained during the course of an illegal detention, this Court has held that such consent presumptively is invalid. *Casas,* 900 A.2d at 1134 (citing *United States v. Cellitti,* 387 F.3d 618, 622 (7th Cir.2004)).

Therefore, evidence obtained based on that consent must be excluded at trial as the fruit of the poisonous tree. *See id.* (citing *State v. Burns,* 431 A.2d 1199, 1205 (R.I. 1981)). As an exception to this general rule, we have held that "a defendant's consent can be deemed valid if it is sufficiently attenuated from the illegal police action 'to dissipate the taint.'" *Id.* (citing *Wong Sun v. United States,* 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The state again carries the burden of demonstrating that the primary taint of the illegal detention has been purged. *Id.*

In this case, while defendant illegally was detained, police officers solicited his consent to search two apartments. During this time, he was not read his *Miranda*[4] rights, nor was he told he was free to leave. Upon very similar facts, this Court held, in *Casas,* that a defendant's consent was invalid because there were no intervening acts of significance that broke the connection between the unlawful detention and defendant's consent. *Casas,* 900 A.2d at 1135. The same is true here. Virtually no time had passed between defendant's detention and his consent, nor were there any intervening circumstances that would have mitigated the taint. Furthermore, the state readily admits that it would not have been able to prove that the causal connection between defendant's illegal detention and his consent to search was broken.

Because the defendant's consent was invalid, the trial justice erred by denying the defendant's motion to suppress evidence seized during the course of the resulting search of the defendant's apartment.

### Conclusion

For the foregoing reasons, the defendant's judgment of conviction is vacated, with directions that the motion to suppress

be granted, and the papers of this case remanded to the Superior Court for further proceedings consistent herewith.

---

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).