DECISION
Before this Court is the Defendant's motion to suppress evidence seized from his backpack and statements that he made, after the car in which he was traveling as a passenger was pulled over by the Coventry Police. The Defendant moves to suppress a .357 Smith and Wesson revolver that the police discovered in the backpack as well as two statements in which he claimed ownership of the backpack. The Defendant claims that actions of the Coventry Police violated rights guaranteed by Amendments IV, V, VI, and XIV of the United States Constitution and Article I, Sections 6 and 10 of the Rhode Island Constitution.
 I FACTS TRAVEL
On August 29, 2009 at 20:36 hours, Detective Sedam stopped a silver car that he observed operating below the posted speed limit of 25 miles per hour and weaving over the fog-line into the breakdown lane. When Detective Sedam approached the driver's door he smelled burnt marijuana. Looking into the car he saw four teenaged occupants who appeared "antsy." The Detective also saw cigar wrappers and tobacco like remnants on the floor. The car was driven by John Gallucci, a juvenile. The Defendant, Joseph Pinheiro, was riding in the front passenger seat. *Page 2 
Shortly after the car was pulled over, Officer Gebo arrived on the scene. Meanwhile, suspecting that the occupants had been smoking marijuana, the Detective asked Mr. Gallucci to step out of the car so he could question him further. As Mr. Gallucci stepped from the car, Detective Sedam saw a closed butterfly knife in the open compartment of the driver's door. Detective Sedam seized the knife and proceeded to pat-down Mr. Gallucci concerned that he may be carrying another weapon. Detective Sedam then ordered the three remaining occupants, including the Defendant, to step out of the car. The Detective testified that they did not have the option to refuse his request to exit the vehicle or leave the scene. As Detective Sedam patted down each of the three remaining occupants in turn, Officer Gebo stood with the others as crowd control. No contraband or weapons were found on any of the vehicle occupants.
While the Defendant and other occupants stood with Officer Gebo, the Detective proceeded to search the car for contraband or other weapons. In an area behind the front passenger seat he found a grinder with a brown and green substance inside the grinder, which he suspected to be marijuana. The Detective then moved his search to the trunk of the car where he found a closed backpack. He noted that the backpack was heavy. The Detective asked who owned the backpack and two of the occupants stated that the backpack belonged to the Defendant; the third did not know who the backpack belonged to. The Detective opened the backpack and found an unloaded .357 Smith and Wesson revolver. After the gun was discovered, the Defendant admitted that the backpack belonged to him. No consent was given by any of the occupants for either the search of the vehicle or the search of the backpack.
In his testimony Detective Sedam estimated that the total time to search the vehicle and its occupants took about fifteen minutes. However, police logs reveal, and the State does not dispute, that the car was pulled over at 20:36 and dispatch was notified that the Defendant was in *Page 3 
custody at 21:41. At the police station the Defendant was read his Miranda rights and signed a Miranda waiver at 23:23. Thereafter, the Defendant again admitted to owning the backpack.
 II STANDARD OF REVIEW
This motion is brought by the Defendant pursuant to Rule 41(f) of the Superior Court Rules of Criminal Procedure. At a suppression hearing, the State bears the burden of proving by a "fair preponderance" that the evidence it offers is admissible.State v. Tavarez, 572 A.2d 276 (R.I. 1990). Involuntary confessions are not admissible, so before a confession can be used at trial, "the State must establish, by clear and convincing evidence, that the defendant knowingly and intelligently waived his or her right against self-incrimination and that the statement was voluntary." State v. Monteiro, 924 A.2d 784, 790 (R.I. 2007).
 III DISCUSSION
Although not the primary argument of the Defendant that should command this Court ordered suppression of the physical evidence and the statements, Defendant suggests that the stop of the vehicle was a pretext. A stop of a motor vehicle for a traffic stop may be constitutional if based upon probable cause to believe a traffic violation has occurred, Whren v. United States,517 U.S. 806, 810 (1996).
 A Standing
"The Fourth Amendment [to the United States Constitution] protects people, not places." State v. Milette,702 A.2d 1165, 1166 (R.I. 1997). "Fourth Amendment rights are personal rights" and "cannot be `asserted vicariously by a defendant merely because he or she may be *Page 4 
aggrieved by the introduction of damaging evidence.'" State v.Quinlan, 921 A.2d 96, 109 (R.I. 2007) (quoting State v.Bertram, 591 A.2d 14, 18 (R.I. 1991)). The burden is on the defendant to establish the "requisite standing to challenge the legality of the search." Id.
A party has standing when he or she has "a reasonable expectation of privacy in the area searched or the thing seized." Id.
(citing State v. Casas, 900 A.2d 1120, 1129-31 (R.I. 2006)). When determining whether a reasonable expectation of privacy exits, "no single factor invariably will be determinative."Casas, 900 A.2d at 1129-30. Thus, property ownership is merely one factor courts consider in determining whether a defendant'sFourth Amendment rights have been violated and the United States Supreme Court has "`decline[d] to use [exclusive] possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched.'" Casas, 900 A.2d at 1130 (quotingUnited States v. Salvucci, 448 U.S. 83, 92 (1980)). Instead, courts considers multiple factors, including "`whether the suspect possessed or owned the area searched or the property seized; his or her prior use of the area searched or the property seized; the person's ability to control or exclude others' use of the property; and the person's legitimate presence in the area searched.'"Quinlan, 921 A.2d at 109 (quoting Casas,900 A.2d at 1130). The Court uses a two-tiered analysis to determine whether there is a reasonable expectation of privacy, and thus standing: "(1) the defendant must have a `subjective expectation of privacy,' and (2) the expectation must also be `one that society accepts as objectively reasonable.'" Id. (quotingBertram, 591 A.2d at 19) (emphasis in original). In order to challenge the seizure of the gun, the defendant must demonstrate that he had a reasonable expectation of privacy in the area searched or property seized. *Page 5 
1. Standing to Challenge the Search of the Vehicle
Precedent from the Rhode Island Supreme Court establishes conclusively that the Defendant did not have reasonable expectation of privacy in the vehicle that would give him standing to challenge the search of the vehicle's trunk. In Quinlan, the Rhode Island Supreme Court held that the defendants' "sporadic use" as passengers in a vehicle "did not give rise to any legitimate expectation of privacy in the vehicle." Id.; seealso Bertram, 591 A.2d at 20-21 (finding defendant had no legitimate expectation of privacy as a passenger in a car leased by his wife in her own name); State v. Pena Lora,746 A.2d 113, 118-19 (R.I. 2000) (holding that a commercial occupant of a vehicle needing repair had no expectation of privacy in that vehicle). In State v. Parra, the defendant moved to suppress evidence of property taken and statements made arguing that there "was no basis to stop the vehicle in which he was a passenger" and that evidence used to convict him was the "direct product of [an] unconstitutional detention and seizure."941 A.2d 799, 802-03 (R.I. 2007). There the State "concede[d] that defendant, a passenger in a stopped vehicle, ha[d] standing to contest the stop." Id. at 803. Based on this concession and the fact that no standing analysis was undertaken by the Rhode Island Supreme Court this Court does not agree with defendant's argument that the Parra holding automatically gives passengers standing to contest the search of a vehicle in which they are riding. Instead, passenger standing continues to rest on the passenger's reasonable expectation of privacy in the vehicle as articulated in Quinlan.
In this case, the Defendant did not have a reasonable expectation of privacy in the vehicle. The testimonial evidence disclosed that the vehicle was not owned, leased, rented or borrowed by the Defendant. Nor was the vehicle owned by any of the other occupants.[1] *Page 6 
No evidence was introduced to show how often the Defendant may have ridden in the car, but Detective Sedam did state that while he was familiar with the three passengers, he did not recognize the vehicle or its driver. Given these facts and our Supreme Court's holding inQuinlan, that a defendant's "sporadic use" as a passenger does "not give rise to any legitimate expectation of privacy in the vehicle," the Court concludes that Defendant does not have standing to challenge the stop and search of the vehicle. 921 A.2d at 109.
2. Standing to Challenge the Search of the Backpack
Although the Defendant had no reasonable expectation of privacy in the vehicle, whether he had an expectation of privacy in his closed backpack is another matter. The United States Supreme Court has not addressed the question of whether an individual may have a reasonable expectation of privacy in personal property found inside a vehicle where he does not have a reasonable expectation of privacy in the vehicle itself, and it is a matter of first impression in Rhode Island as well. Where facts closely align with those here, courts have found that a reasonable expectation of privacy exists in personal property located inside a stopped vehicle. SeeUnited States v. Edwards, No. 00-1007, 2001 WL 36286643, at *6 (10th Cir. Mar. 9, 2001) (unauthorized driver of rental car did not have standing to challenge the search of the car, but did have a reasonable expectation of privacy in his luggage that was stored in the trunk);People v. Young, 843 N.E.2d 489, 491-92 (Ill. App. Ct. 2006) (passenger in a vehicle during an inventory search by a government agent, did not have a reasonable expectation of privacy in the vehicle, but did have a reasonable expectation of privacy in his closed suitcase that was stored in the trunk). Most compelling is the First Circuit's determination that a passenger maintained an expectation of privacy in a closed briefcase that he stored in the locked trunk of a vehicle for a period of days. United States v.Infante-Ruiz, 13 F.3d 498, 501 (1st Cir. 1994). After the *Page 7 
vehicle in which he was riding was stopped and the defendant was arrested and restrained in a squad car, the driver told the police that the briefcase in the vehicle's trunk belonged to the defendant.Id. at 500. The driver neither consented nor objected to the police officer opening the defendant's unlocked briefcase.Id. The First Circuit reasoned that storing items in this manner did not "reveal a willingness on the part of [the defendant] to `expose' such items to the public" and nothing indicated that the defendant "abandoned the briefcase, relinquished authority over it, or left it open to `public inspection and consumption.'"Id. at 501. Although defendant's confederates felt entitled to place their own possessions inside the suitcase and it was stored in the trunk even at times when defendant was not a passenger, nothing indicated that it was available to the general public or that defendant intended to forgo his ownership right to exclude those he wished. Id. at 501-02.
Here, testimony indicates that the Defendant asked the driver to pop the trunk so he could store his closed backpack in it while he was a passenger in the car. Although two occupants told the police officer that the backpack belonged to the Defendant, nothing indicates that they knew what was stored inside it or felt entitled to place items of their own inside it. There is no indication that the Defendant ever revealed the contents of his backpack to anyone. While this Court finds the Defendant's expectation of privacy more compelling than the Infante-Ruiz defendant's in most respects, it must briefly consider whether Defendant abandoned the backpack by failing to claim ownership before Detective Sedam opened the backpack.
Generally, "an intention to abandon will not ordinarily be presumed" and it may not be used if the abandonment "results from illegal police activity." State v. Bennett,430 A.2d 424, 427 (R.I. 1981). Before opening the backpack, Detective Sedam asked whom it belonged to. The Defendant did not claim ownership, although two occupants said it was his. After the gun *Page 8 
was discovered, the Defendant then claimed ownership for the backpack. However, at no point in this process was Defendant given his Miranda warnings, despite the custodial nature of the stop, discussed in detail below. Without this procedural safeguard, Defendant's failure to claim ownership cannot amount to abandonment because it "result[ed] from illegal police activity." Id.
Defendant had a subjective expectation of privacy in the closed backpack he placed in the locked trunk without showing or telling his companions what was stored inside and it is an expectation that society would accept as objectively reasonable. Thus, the Court finds that Defendant has met his burden and established that he has the requisite standing to challenge the search of his backpack.
 B Search and Seizure
"[I]t long has been recognized that the exclusionary rule is a prophylactic device designed to deter constitutional transgressions by law enforcement." Casas, 900 A.2d at 1135. Bearing in mind that the State must prove by a "fair preponderance" that the evidence it offers is admissible and that Defendant's standing limits his challenge to the search of his backpack, the Court will focus its inquiry on whether the police had probable cause to search this item. Tavarez, 572 A.2d at 279.
A "probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers."United States v. Ross, 456 U.S. 798, 808 (1982). Probable cause exists to search a vehicle if under the "totality of the circumstances" there is a "fair probability" that the vehicle contains contraband or evidence. Illinois v. Gates,462 U.S. 213, 238 (1983). See State v. Verrecchia,880 A.2d 89, 94 (R.I. 2005) (applying this flexible "totality-of-the-circumstances" *Page 9 
analysis to determine the existence of probable cause). Furthermore, the scope of a warrentless automobile search "is defined by the object of the search and the places in which there is probable cause to believe it may be found." Ross, 456 U.S. at 824. This allows police to search a container in an automobile without a warrant when they have probable cause to believe the container holds contraband or evidence of a crime. See California v.Acevedo, 500 U.S. 565, 574 (1991); State v. Werner,615 A.2d 1010, 1013 (R.I. 1992).
Thus, the question facing this Court is whether, based on the totality-of-the-circumstances, objective facts led Detective Sedam to conclude that there was a fair probability that Defendant's backpack contained contraband or a weapon. The following facts are relevant to the Detective's determination: When the Detective first approached the vehicle he smelled burnt marijuana and saw cigar casings and tobacco remnants on the floor of the vehicle. Based on his training in identifying marijuana odors and narcotics paraphernalia, he suspected that the occupants had been smoking marijuana. When he then asked the driver to step out of the car, contemporaneously with the driver's exit, the Detective saw a closed butterfly knife in the compartment of the driver's door in plain view. The Detective removed the occupants from the vehicle and patted them down. No contraband or weapons were found. However, when the Detective searched the car for additional weapons, his search unearthed a grinder, with what he suspected to be marijuana remnants on it. Based on this finding, the Detective moved his search to the vehicle's trunk where he found a closed backpack. He noted that the backpack was heavy.
There are conflicting authorities on whether police can legally search a trunk of a car after smelling marijuana emanating from the passenger compartment. In Commonwealth v. Garden, the Supreme Judicial Court explained that: *Page 10 
 "There is no question that in many cases involving searches of automobiles, probable cause extends to every area within the vehicle, including the trunk. The facts of this case, however, require a different conclusion, because the odor detected by the officers was not the odor of raw marijuana, which might reasonably suggest the defendant was engaged in selling or transporting the drug, but rather the odor of burnt marijuana, suggesting that the defendant, or others in the car, had been smoking marijuana in the not too distant past. Simply from detecting the odor of burnt marijuana on the clothes of the car's occupants-most of whom he had seen enter the car a very short time before-the officer could not reasonably have inferred that burning, recently burned, or even raw marijuana would be found in the trunk. Accordingly, the search of the trunk was beyond the scope permitted by . . . the Fourth Amendment." 883 N.E.2d 905, 913 (Mass. 2008).
The Court also clarified that:
 "Had the officers discovered contraband during the search of the passenger compartment or its passengers, even a small amount suggesting personal use, the permissible scope of the search might have extended not only to the passenger compartment of the automobile but also to its trunk. This is because `[i]t is widely acceptable that the discovery of some controlled substances gives probable cause to search for additional controlled substances in the vicinity." Id. at 914 (quoting Comm. v. Skea, 18 Mass. App. Ct. 685, 690 n. 8, 470 N.E.2d 385 (1984)).
Likewise, in U.S. v. Nielsen, the Tenth Circuit held that the detection of burnt marijuana odor in the passenger compartment, without further corroborating evidence, did not provide probable cause to search the trunk of the vehicle. 9 F.3d 1487, 1491 (10th Cir. 1996). The First Circuit has held that when a police officer "detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area."U.S. v. Staula, 80 F.3d 596, 602 (1st Cir. 1996).
However, when other contraband or further corroborating evidence is discovered, Courts have held that probable cause exists to search the trunk. Recently, the Appeals Court of Massachusetts explained that the police officer "found two marijuana cigarettes and marijuana remnants inside the automobile, establishing a connection between contraband and the vehicle. *Page 11 
In addition, the driver . . . admitted that he and his passengers had been smoking marijuana in the vehicle."Comm. v. DeGray, 928 N.E.2d 971, 974 (Mass. App. Ct. 2010). The Court held that "all of these factors support a connection between the contraband and the automobile, a connection not present in Garden." Id. Therefore, extending the search to the trunk was "justified by the circumstances." Id. See alsoComm. v. Zagarella,2010 WL 1641558, at *2 (Mass. App. Ct. Apr. 26, 2010) (discovery of burnt marijuana cigarettes, marijuana seeds and stems, and cigars during the search of the passenger compartment distinguished the case from Garden and Defendant's motion to suppress search of the vehicle's trunk was properly denied.)
In 1998 the Supreme Judicial Court of Maine examined federal precedent and found it consistent with its holding that probable cause to search the trunk exists when police officers discovered a bag of marijuana on the defendant's person as well as other incriminating evidence." State v. Ireland,706 A.2d 597, 600 (Me. 1998). The Court cited to:
 "United States v. Parker, 72 F.3d 1444, 1450 (10th Cir. 1995) (smell of burnt marijuana in car and rolled-up dollar bill with white powder residue and marijuana cigarette on person of defendant established probable cause for search of trunk); United States v. Reed, 882 F.2d 147, 149 (5th Cir. 1989) (nervousness of occupants and officer's detection of odor of burnt marijuana as he approached driver's window justified search of entire vehicle, including locked compartment in rear of station wagon); United States v. Loucks, 806 F.2d 208, 210-11 (10th Cir. 1986) (smell of still burning marijuana cigarette butts and a small bag of marijuana supported trunk search); United States v. Burnett, 791 F.2d 64, 67 (6th Cir. 1986) (small amount of marijuana on floorboard of passenger compartment provided probable cause to search trunk); United States v. Hough, 944 F. Supp. 20, 23 n. 2 (D.D.C. 1996) (smell of marijuana and discarded marijuana cigarettes on floor of car provided probable cause to search entire car including trunk). . . ." Id. at 601.
Additionally, in State v. Betz, the Supreme Court of Florida concluded "that the police officer . . . had probable cause to search both the passenger compartment and the trunk" because the officer smelled "a very strong odor of marijuana coming directly out" of the car's window. 815 So. 2d 627, 633 (Fla. 2002). In addition, the driver became extremely "nervous" and "jittery" during *Page 12 
the pre-search interaction with the police officer, the driver suspiciously attempted to push off the car during the frisk, and the frisk revealed a storage bag containing marijuana. Id.
Conversely, in State v. Redden, Justice Thunberg held that there was no probable cause to search the trunk of a vehicle. 2002 WL 31455578 (R.I. Super. Ct. Oct. 19, 2002). There, as the defendant driver stepped out of the car, the police officer smelled burnt marijuana and observed a small plastic bag with what appeared to be marijuana residue inside it on the driver's side floor of the vehicle. Id. at *1. The police officer ordered the driver to open the vehicle's hatch, and a search of the trunk uncovered a bag containing forty individual bags of marijuana, a bag with 9mm live clip, and a 9mm handgun under the front seat.Id. Justice Thunberg reasoned that no probable cause existed because when the police officer was asked on cross-examination whether he knew what was in the bags in the trunk before he decided to search them he stated "I had no idea, but I had a pretty good idea." Id. at *3. The officer also stated that based on the "totality of the circumstances" he wanted to search the bags in the trunk. Id. These statements did not "articulate any specific reason for the police to believe evidence of any crime or contraband was located in the hatch of the vehicle. The police were clearly suspicious, but the law distinguishes mere suspicion and probable cause." Id.
Here, the facts are distinguishable from a situation where an officer searches a vehicle's trunk based solely on smelling burnt marijuana. In addition to smelling burnt marijuana when he approached the vehicle, Detective Sedam also testified that he saw cigar casings and tobacco remnants on the floor of the vehicle, that the occupants presented a general air of nervousness, and that his search of the passenger compartment uncovered a grinder with what he suspected to be marijuana remnants on it based on his narcotics training. Therefore, this case is more analogous to cases in which something more than the smell of burnt marijuana is detected. As *Page 13 
the Supreme Judicial Court stated in Garden, "[h]ad the officers discovered contraband during the search of the passenger compartment or its passengers, even a small amount suggesting personal use, the permissible scope of the search might have extended not only to the passenger compartment of the automobile but also to its trunk." 883 N.E.2d at 914. This case is also likely distinguishable from Redden. Defendant Sedam articulated that based upon finding the knife and the grinder in the passenger compartment he extended his search to the trunk believing that other contraband or weapons may be located in the trunk. Unlike the officer in Redden, Detective Sedam did not state that he had "no idea" what he would find in the trunk and bag. SeeRedden, 2002 WL 31455578, at *3.
Here, the totality-of-the-circumstances, including the smell or burnt marijuana, seizure of a knife, and discovery of a grinder with suspected marijuana remnants, justified the search of not only the trunk, but closed containers located therein. Therefore, the Defendant's motion to suppress the gun seized from his backpack is denied because the State has proved by a "fair preponderance" that the evidence is admissible because the Detective's search was supported by probable cause.
 C The Statements
"The sole issue in * * * a [suppression] hearing is whether a confession was coerced." State v. Forbes,900 A.2d 1114, 1118 (R.I. 2006) (quoting Lego v. Twomey,404 U.S. 477, 485 n. 12 (1972)). The suppression hearing is intended "to ensure, as a threshold matter, that the taking of the statement comported fully with the rights afforded a criminal defendant under article 1, section 13, of the Rhode Island Constitution and theFifth and Fourteenth Amendments to the United States Constitution."Id. *Page 14 
The guidelines set forth in Miranda v. Arizona,384 U.S. 436 (1966), rest admissibility of statements made by a suspect subjected to a custodial interrogation, on whether or not the suspect was informed of his constitutional rights before making the statement. Dickerson v. United States,530 U.S. 428, 435 (2000). When ruling on a motion to suppress a confession, the Rhode Island Supreme Court has articulated that "the trial justice should `admit a confession or a statement against a defendant only if the state can first prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his [or her] constitutional rights as expressed in Miranda.'" State v. Robinson,989 A.2d 965, 974 (R.I. 2010) (quoting State v. Bido,941 A.2d 822, 835 (R.I. 2008)).
1. Statement at the Stop
It is well settled that Miranda safeguards become applicable as soon as a suspect's freedom is "curtailed to a `degree associated with formal arrest.'" Berkemer v. McCarty,468 U.S. 420, 440 (1984) (quoting California v. Beheler,463 U.S. 1121, 1125 (1983)). "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him `in custody' for practical purposes, he will be entitled to the full panoply of protections proscribed by Miranda."Id. "A person is seized or under arrest forFourth Amendment purposes if, in view of all the circumstances, a reasonable person would believe that he or she was not free to leave." State v. Briggs, 756 A.2d 731, 737 (R.I. 2000) (quoting State v. Diaz, 654 A.2d 1195, 1204 (R.I. 1995)). To make this determination, the Court considers the following factors: "(1) the extent to which the person's freedom is curtailed; (2) the degree of force employed by the police; (3) the belief of a reasonable, innocent person in identical circumstances; and (4) whether the person had the option of not accompanying the police." Id. *Page 15 
Here, Police logs show that the vehicle was stopped at 20:36 hours and that Defendant was officially in police custody at 21:41 hours. However, given the circumstances of the stop, this Court finds that Defendant was subject to a custodial type situation before he was formally taken into police custody. InParra, a three or four minute detention after the original purpose of a motor vehicle stop was completed was held to be a "prolonged" and "unlawful" detention and consent obtained during the course of the illegal detention was invalid. 941 A.2d at 804-05. Therefore, a roadside stop in excess of one hour factors into the Court's determination that Defendant was in custody during the course of the stop and search of the vehicle. Moreover, Detective Sedam testified that when he "removed" the Defendant and other occupants from the vehicle they did not have the option to refuse him. During the search of the vehicle, Officer Gebo stood with the occupants, including the Defendant, to provide officer protection. The Defendant was not told that he was free to leave and no Miranda warnings were given. Moreover, during the stop, the Defendant was subjected to questioning intended to illicit ownership of a backpack in which the police had just discovered a gun. If the Detective wanted to question the Defendant about who owned the backpack, he should have informed the Defendant of his constitutional rights. Therefore, the Defendant's initial statement admitting ownership of the backpack in which the gun was discovered must be suppressed.
2. Statement at the Police Station
The Court must now consider whether Defendant's second assertion of ownership, following a waiver of his Miranda rights, constitutes a voluntary statement in light of Detective Sedam's prior, pre-Miranda custodial questioning. In Oregon v. Elstad, the United States Supreme Court held that a "suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been *Page 16 
given the requisite Miranda warnings." 470 U.S. 298, 318.See State v. DeOliveira, 972 A.2d 653, 660 (R.I. 2009) (acknowledging the Elstad holding and noting that during a suppression hearing the defendant's attorney properly distinguished between oral statements that would fall under Elstad and the admissibility of a breathalyzer result). In Elstad, the Supreme Court explained that "[a]bsent deliberately coercive or improper tactics in obtaining the initial statement the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." Elstad, 470 U.S. at 314. Although where an initial statement is actually coerced the time that passes, change in place of interrogation, and change in the interrogator all bear on whether coercion carried over into the second confession, where the initial statement is voluntary, a "subsequent administration of Miranda warnings to a suspect . . . ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." Id. at 310, 313.
To decide whether a statement is voluntary, this Court must consider "the totality of the circumstances surrounding the challenged statement." State v. Ramsey,844 A.2d 715, 720 (R.I. 2004). Our Supreme Court has held that a voluntariness determination must be "made on the basis of all facts and circumstances including the behavior of the defendant and the behavior of the interrogators, and the ultimate test `is whether the defendant's statements were the "product of his free and rational choice" * * * or the result of coercion that had overcome the defendant's will at the time he confessed.'" State v.Forbes, 900 A.2d 1114, 1118 (R.I. 2006) (quoting State v.Torres, 788 A.2d 1214, 1224-25 (R.I. 2002)).
Here, the initial statement by the Defendant is suppressed because as discussed above, the Defendant was subjected to police questioning in what amounted to a custodial setting whereMiranda warnings should have been administered. However, nothing indicates that the police *Page 17 
intentionally withheld the Miranda warnings or that they used coercive tactics that "overcame the defendant's will" at the time he made his initial statement. See id. Although the police failed to recognize the custodial nature of the stop and improperly questioned the Defendant, the Court finds that his admission amounted to an unwarned, but voluntary statement. Therefore, the question facing this Court is whether, after Miranda warnings were administered at the police station, the Defendant knowing and voluntarily waived his right against self-incrimination.
At the police station, a Miranda rights form was executed at 23:23 hours and Defendant signed the form acknowledging that he understood his rights. Defendant then admitted to owning the backpack. No evidence was presented that the police coerced Defendant into making this statement. Moreover, even if Defendant had successfully introduced evidence of his cognitive function[2], this evidence would not have precluded a determination that Defendant's waiver was voluntary. See e.g.,United States v. Campbell, No. 07-0109 S., 2009 WL 1106769 (D.R.I. Apr. 23, 2009) (testimony from a psychologist that the special education defendant, who dropped out of school, did not earn a GED and in his opinion was mildly mentally retarded, suffered from bipolar disorder, anxiety and depression and read at approximately a third grade level, although significant, failed to render the defendant's waiver and subsequent statement involuntary or unknowing). Therefore, the police's initial mistake is cured by the "careful and thorough administration ofMiranda warnings," which the Defendant acknowledged understanding line by line. See Elstad,470 U.S. at 310-11. *Page 18 
One additional issue the Defendant's attorney raised in arguing that the statement should be suppressed, was the failure of the police to comply with G.L. § 12-7-20, which provides that a person who is arrested "as soon after being detained as practicable, not to exceed one hour from the time of detention, the opportunity to make use of a telephone for the purpose of securing an attorney. . . ." Although the Rhode Island Supreme Court's decisions discussing the application are primarily DUI cases, the statute applies generally to "[a]ny person arrested under the provision of [the Arrest] chapter." Id. Our Supreme Court has explained that although "notice is mandatory," the right to a confidential telephone call "does not rise to the level of a constitutional right" and "the failure to notify the suspect of his right to use a telephone is not fatal to the state's case unless the defendant is prejudiced thereby." State v. Carcieri, 730 A.2d 11, 15 (R.I. 1999). A proper avenue for a defendant to challenge the denial of his right to a free telephone call is a motion to suppress. State v.Veltri, 764 A.2d 163, 167 n. 5 (R.I. 2001).
During the suppression hearing Detective Sedam's testimony on this matter was vague. He did not appear to know about his statutory obligation to inform the Defendant of his right to make a confidential telephone call and did not remember informing the Defendant that he could make a call. Detective Sedam also acknowledged that the Coventry Arrest Report indicates that a telephone call was not offered. Furthermore, the Defendant was for all intensive purposes in police custody from the time the car was stopped at 20:36. Over an hour passed on the side of the road. Once the Defendant was at the police station, it is not clear when, if ever, he was informed of his right to make a telephone call. Therefore, a violation of § 12-7-20 occurred.
Our Supreme Court has explained that "each alleged violation of § 12-7-20 must be considered on a case-by-case basis to determine the appropriate remedy" that would neutralize the taint.Carcieri, 730 A.2d at 16. The Court provided further guidance on the appropriate *Page 19 
remedy in Veltri, explaining that where "evidence has been obtained in violation of the defendant's constitutional or statutory rights, the remedy usually imposed is not to dismiss the indictment or charges, but to suppress any evidence obtained because of the violation. . . ." 764 A.2d at 167-68. There, the defendant made no showing of suffering any substantial prejudice, where all evidence used to convict him was lawfully obtained before he arrived at the police station so that the failure to provide him with a free telephone call constituted only harmless error.Id. at 168. The Court further opined that "the mere possibility that the defendant may have been able to telephone a lawyer," and obtain a second breath-analysis with favorable results to counter the prosecution's evidence, "provided much too attenuated, hypothetical, and speculative scenario to constitute a showing of substantial prejudice." Id.
Although Defendant was informed of his constitutional rights at the police station, he was not informed of his statutory right to a free telephone call before he admitted owning the backpack. Where the State seeks to introduce this statement at trial, the Defendant clearly has demonstrated a substantial threat of prejudice. In this instance, it is not as speculative and attenuated a situation as in Veltri, because instead of attempting to obtain additional evidence to counter the State's case, the Defendant merely seeks to suppress statements he made without being informed of his right to a free telephone call to contact an attorney. Therefore, to neutralize the taint, Defendant's second statement is suppressed.
 IV CONCLUSION
The Court finds that the State met its burden of demonstrating by a "fair preponderance" that the gun discovered in Defendant's backpack is admissible and that the Detective had probable cause to search the backpack. Therefore, Defendant's motion to suppress the gun *Page 20 
discovered inside the backpack is denied. Defendant's first oral claim of ownership is suppressed because he was not informed of his constitutional rights pursuant to Miranda. Defendant's written admission of ownership at the police station is suppressed because Defendant was not informed of his right to a confidential telephone call pursuant to § 12-7-20.
[1] There was testimony that the car was owned by the driver's mother.
[2] Defendant attempted to present his mother to testify as to Defendant's being placed in special education classes beginning in the first grade; Defendant's formal education ending after he repeated his sophomore year in high school; a diagnosis of ADHD. Defendant made his offer of proof on the subject matter. Because the defendant did not intend to offer the testimony of an expert witness to testify to support his claim that because of his limited cognitive ability he could not have understood his Miranda warnings, the Court on the objection from the State ruled this proposed testimony irrelevant.
 *Page 1