May 26, 2022

**Supreme Court**

No. 2020-121-C.A.
(W3/18-464A)

State                                    :

v.                                    :

Joseph Corcoran.                          :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email:    opinionanalyst@courts.ri.gov,    of    any typographical  or  other  formal  errors  in  order  that corrections may be made before the opinion is published.

State           :

v.            :

Joseph Corcoran.       :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on April 5, 2022, on appeal by the State of Rhode Island, seeking review of a Superior Court order granting a motion to suppress all statements made to police by the defendant, Joseph Corcoran. The state argues that the trial justice erred in finding that the defendant was in custody at the scene of an automobile collision and, therefore, erroneously suppressed the statements that the defendant made to the officers at the time. Additionally, the state avers that the rights the police officer read to the defendant at the time of his arrest and at the police station were sufficient to apprise the defendant of his constitutional rights—an issue the trial justice did not reach. For the reasons set forth in this opinion, we affirm the order of the Superior Court.

**Facts and Travel**

During the evening of October 23, 2018, Westerly police officer Travis Nichols arrived at the scene of an accident on Route 78 eastbound in Westerly, Rhode Island, where he learned from a witness that defendant's vehicle had struck a light pole on the side of the ramp approaching Route 78. According to the witness, after observing the collision, he checked on defendant and noticed that he smelled of alcohol; the witness shared this information with Officer Nichols and also identified defendant, who was standing outside of the driver's-side door of his vehicle, as the driver of the vehicle that struck the light pole. After speaking with the witness, Officer Nichols approached defendant and observed damage to the passenger-side front bumper, hood, and roof of defendant's vehicle, and that the vehicle's airbags had deployed. The light pole was on the ground. Although defendant did not appear injured and told the officer that he was uninjured, the fact that the airbags deployed prompted Officer Nichols to request an ambulance.[1]

While speaking with defendant, Officer Nichols noted the tell-tale signs of intoxication. The defendant's eyes were bloodshot and watery; his speech was slurred; and his breath smelled of alcohol. At that point, Officer Nichols asked defendant "if he had consumed any alcoholic beverages[,]" to which defendant

---

[1] Officer Nichols testified that it is a typical—and, we suggest, rather prudent—practice to have someone medically screened when airbags have deployed in a collision, regardless of whether the person appears injured or not.

replied, "[N]o." Officer Nichols then requested that defendant move to the front of his vehicle, away from the driver's-side door. Before conducting three field sobriety tests, Officer Nichols testified, he informed defendant that he had "suspicions that [defendant] had been drinking, even though he first said that he hadn't," and he proceeded to "ask[] [defendant] again if he had been drinking." The defendant then admitted that he had been drinking and that he had consumed "two beers." A "backup" police officer, Officer Toscano, arrived at the scene; and, while Officer Nichols conducted field sobriety tests, which indicated that defendant was impaired, an ambulance arrived and parked approximately ten feet in front of defendant's vehicle on Route 78.

The emergency medical technicians approached defendant, who remained near Officer Nichols. At that point, Officer Toscano approached Officer Nichols to report that, after the collision, the witness saw defendant toss something into the woods bordering the side of the road. Officer Nichols then asked defendant if he had thrown anything into the woods, to which defendant responded in the negative. Officer Toscano inspected the area and retrieved a paper bag containing three empty forty-two-ounce bottles of high-alcohol-content beer.[2] When Officer

---

[2] State's Exhibit 2 presented at the hearing on the motion to suppress in the Superior Court was a photograph of the empty beer bottles from the paper bag that was thrown into the woods. Although state's Exhibit 5, the Influence Report Form from the date of the arrest, states that he consumed two "40 oz" beers, the

Nichols again asked defendant if he had thrown the bag into the woods, defendant responded, "[Y]es." At that point, Officer Nichols testified, "while Patrolman Toscano *stood by with the suspect*," he retrieved a preliminary breath test from his patrol vehicle and asked defendant to take the test. (Emphasis added.) The defendant agreed to submit to the test, which registered at a level of 0.201. He was placed under arrest "for suspicion of DUI."

After he arrested defendant and placed him in the police cruiser, Officer Nichols read defendant a "Rights For Use At Scene" card, which provided:

> "You are suspected of driving while under the influence of intoxicating liquor and/or drugs.
>
> "You have the right to remain silent. You do not have to answer any questions or give statements. If you do answers questions or give statements, they can and will be used in evidence against you in court. You have the right to an attorney. If you cannot afford an attorney, one will be provided for you.
>
> "You have the right to be examined at your own expense immediately by a physician selected by you. You will be afforded a reasonable opportunity to exercise this right."[3]

---

photograph displays three bottles of "Steel Reserve," each indicating "42 ounce" on the label.

[3] Officer Nichols did not read the reverse side of the "Rights For Use At Scene" card to defendant, which is titled "Constitutional Rights" and provides, in full, that:

Upon arriving at the Westerly police station, Officer Nichols read defendant the "Rights For Use At Station/Hospital" form, which provided, in pertinent part, that:

> "You are under arrest for operating a motor vehicle while under the influence of intoxicating liquor * * *.

> "You have the right to remain silent. You do not have to answer any questions or give statements. If you do answer questions or give statements, they can and will be used in evidence against you in court. You have the right to an attorney. If you cannot afford an attorney, one will be provided for you."

After defendant was allowed a confidential phone call, Officer Nichols filled out an "Influence Report Form" while asking defendant a series of questions and recording his answers. The defendant admitted that he had been operating a

---

> "1) You have the right to remain silent. You do not have to give a statement or answer any questions.

> "2) If you give up your right to remain silent, anything you say can and will be used against you in a Court of Law.

> "3) You have the right to the presence of a lawyer and to talk with a lawyer before and during any questioning.

> "4) If you cannot afford a lawyer and you want one, a lawyer will be appointed for you at no cost to you before any questioning.

> "5) If you do talk to the police, you can stop at any time.

> "6) These are your Constitutional Rights, do you understand them?"

vehicle, that he had drunk two forty-ounce bottles of beer, and that he was under the influence of alcohol. The defendant also agreed to take additional chemical tests. The foregoing events led to defendant being charged with driving under the influence of alcohol, in violation of G.L. 1956 § 31-27-2.

The defendant filed a motion to suppress his roadside admissions that he had been drinking, as to the amount of alcohol he had consumed, and that he tossed the empty beer bottles into the woods (the on-the-scene statements), on the basis that those statements were the product of a custodial interrogation without being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The defendant also sought to suppress the statements that were made and recorded in the Influence Report Form at the police station (the recorded statements), on the basis that the rights cards that Officer Nichols read to him did not fully and adequately inform him of his right to have an attorney present during questioning or of his right to exercise this or other *Miranda* rights at any point during the interrogation.

Following an evidentiary hearing, at which Officer Nichols testified and documents were admitted, the trial justice found that defendant was in custody at the time he made the challenged admissions because "no reasonable person would feel as though he was free to leave the scene" after defendant was relocated to the roadside for further investigation and the officer expressed his disbelief about

- 6 -

defendant's statement that he had not been drinking. As a result, the trial justice suppressed the on-the-scene statements as products of a custodial interrogation in the absence of the requisite *Miranda* warnings. The trial justice also found that "any further statements uttered, or written, by [defendant] during this continued custodial interrogation, [were] inadmissible as fruits of the poisoned tree." Consequently, the trial justice granted defendant's motion to suppress all statements made to the police on the night of his arrest. An order entered, and the state filed a timely appeal.

**Standard of Review**

"It is well settled that this Court 'will reverse a trial justice's findings on a motion to suppress only if (1) his or her findings concerning the challenged statements reveal clear error, and (2) our independent review of the conclusions drawn from the historical facts establishes that the defendant's federal constitutional rights were denied.'" *State v. Grayhurst*, 852 A.2d 491, 513 (R.I. 2004) (quoting *State v. Garcia*, 743 A.2d 1038, 1044 (R.I. 2000)). "With respect to questions of law and mixed questions of law and fact involving constitutional issues, however, this Court engages in a *de novo* review[.]" *State v. Jimenez*, 33 A.3d 724, 732 (R.I. 2011) (quoting *State v. Linde*, 876 A.2d 1115, 1124 (R.I. 2005)); *see State v. Parra*, 941 A.2d 799, 803 (R.I. 2007) ("We * * * conduct a *de*

*novo* review of the record and independently consider whether a defendant's rights have been violated.").

**Analysis**

The state contends that the trial justice clearly erred in finding that "defendant's freedom of movement was * * * curtailed in such a way prior to his actual arrest so as to constitute custody" and erred in considering the officer's suspicion of defendant's intoxication as a factor in determining whether defendant was in custody.

"Both the United States and the Rhode Island Constitutions forbid the use of a defendant's involuntary confession." *State v. Monteiro*, 924 A.2d 784, 790 (R.I. 2007). "The Fifth Amendment [to the United States Constitution] provides: 'No person * * * shall be compelled in any criminal case to be a witness against himself[.]'" *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (quoting U.S. Const., Amend. V). "In accordance with the crucially important holding in *Miranda*[,] * * * before a confession can be used at trial, the state must establish, by clear and convincing evidence, that the defendant knowingly and intelligently waived his or her right against self-incrimination[.]" *Monteiro*, 924 A.2d at 790.

To safeguard this right, "prior to custodial interrogation a suspect must receive explicit warnings concerning his constitutional privilege against self-incrimination and his right to counsel." *Grayhurst*, 852 A.2d at 513 (quoting *State*

*v. Amado*, 424 A.2d 1057, 1061 (R.I. 1981)); *see Miranda*, 384 U.S. at 444, 478-79. However, the warnings under *Miranda*, and exclusion of statements in violation thereof, are only required when a person is in custody and is undergoing interrogation by the police. *E.g.*, *State v. Edwards*, 810 A.2d 226, 239 (R.I. 2002).

"Absent a formal arrest[,]" *Edwards*, 810 A.2d at 240, a person is in custody "if, in view of all the circumstances, a reasonable person would believe that he or she was not free to leave." *Jimenez*, 33 A.3d at 732 (quoting *State v. Vieira*, 913 A.2d 1015, 1020 (R.I. 2007)). "In making this determination, a court may consider the following factors: (1) the extent to which the person's freedom is curtailed; (2) the degree of force employed by the police; (3) the belief of a reasonable, innocent person in identical circumstances; and (4) whether the person had the option of not accompanying the police." *State v. Briggs*, 756 A.2d 731, 737 (R.I. 2000) (quoting *State v. Diaz*, 654 A.2d 1195, 1204 (R.I. 1995)); *see Berkemer*, 468 U.S. at 428 (recognizing that a person is in custody when "deprived of his [or her] freedom of action in any significant way") (quoting *Miranda*, 384 U.S. at 444).

Applying these factors to the present case, we are satisfied that the trial justice correctly determined that defendant was in custody when he made the incriminating statements to Officer Nichols at the scene of the accident. We are unmoved by the state's averment, citing *Berkemer*, 468 U.S. at 439, and *Terry v. Ohio*, 392 U.S. 1 (1968), that this case should be compared to an ordinary traffic

stop for suspicion of driving under the influence, or to a case where there was a jurisdictional issue underlying the defendant's arrest, citing *State ex rel. Town of Little Compton v. Simmons*, 87 A.3d 412 (R.I. 2014). *See Simmons*, 87 A.3d at 413 (considering whether Little Compton police officers arrested the defendant illegally in the Town of Tiverton or lawfully in the Town of Little Compton).

In the case at bar, the officer was called to the scene of a single-vehicle collision and was informed by the roadside witness that defendant crashed into the light pole as he approached Route 78 from the on-ramp and, in the witness's opinion, smelled of alcohol. Officer Nichols approached defendant, who was out of his vehicle, and observed a light pole on the ground; damage to the body of defendant's vehicle; airbags that had deployed; and defendant's bloodshot and watery eyes, slurred speech, and alcohol-tainted breath. Beyond that point and until defendant was informed of his arrest, a police officer *at all times* remained with defendant. Although there was no force employed by the police, defendant's freedom of movement was curtailed by the watchful accompaniment of either Officer Nichols or Officer Toscano throughout the investigation and interrogation, whereby defendant admitted to consuming the ubiquitous "two beers." Furthermore, in the context of these events, no further restriction on defendant's freedom and no amount of force were necessary to satisfy a factfinder that defendant was in custody. *See United States v. Mittel-Carey*, 493 F.3d 36, 40 (1st

Cir. 2007) (considering, relevant to the custody calculus—namely, the physical control agents exerted over the defendant—that the defendant was escorted by agents on the three occasions he was permitted to move to different areas in his home).

With respect to the trial justice's finding that defendant was in custody once he was relocated and then questioned a second time about alcohol consumption by an officer who was armed with all the indicia of an individual who had been driving under the influence, we are of the opinion that a factfinder could conclude that no reasonable person would feel free to leave. Although the state contends that Officer Nichols's mere suspicion of defendant's intoxication is not a factor to the custody determination, we deem this argument unavailing. "[A]n investigating officer's unarticulated plan has no bearing on whether a person is in custody at a particular time." *Briggs*, 756 A.2d at 737 (quoting *Diaz*, 654 A.2d at 1204-05). However, "[t]he *lack of any communication* concerning the * * * investigation is crucial" and factors into how a reasonable, innocent person would assess the situation and his or her freedom to leave. *Diaz*, 654 A.2d at 1205 (emphasis added). This inquiry turns on whether the objective of the investigation is disclosed to a suspect, as the United States Supreme Court has explained:

> "It is well settled, then, that a police officer's subjective view that the individual under questioning is a suspect, *if undisclosed*, does not bear upon the question whether the individual is in custody for purposes of *Miranda*. * * *

- 11 -

> *Save as they are communicated or otherwise manifested to the person being questioned*, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry." *Stansbury v. California*, 511 U.S. 318, 324 (1994) (emphasis added).

In fact, Officer Nichols's suspicion that defendant had been drinking was articulated to defendant and, thus, was not a mere subjective opinion without consequence to the custody determination. After coming to a conclusion on defendant's physical state due to the initial circumstances—such as the light pole on the ground; the witness's statements; the deployed airbags and damaged vehicle; and the appearance, speech, and odor of alcohol—Officer Nichols directed defendant to move to a different location. He then informed defendant of the officer's belief that defendant had been untruthful about drinking and asked him once again if he had been drinking, followed by failed field sobriety tests, further questioning, and a preliminary breath test. Once Officer Nichols communicated his suspicion to defendant, any reasonable person—innocent or not—would have understood, based on the objective indicia, that he or she was being investigated for the crime of driving under the influence and was not free to leave. *See Diaz*, 654 A.2d at 1205. In addition, Officer Nichols made it clear in his testimony that he would not have "let [defendant] walk away" from the scene.

The state assigns error to the trial justice's failure to articulate each of the custodial factors in her determination that "no reasonable person would feel as

though he was free to leave the scene." However, these factors, discussed *supra*, are designed to direct the trial justice's attention to the factual circumstances in a given case, which can include myriad situations. *Briggs*, 756 A.2d at 737 (listing four factors a court may consider in determining whether "[a] person is seized or under arrest"); *see Diaz*, 654 A.2d at 1204. The analysis, which the trial justice appropriately undertook, is whether, in the totality of the circumstances, "a reasonable person would believe that he or she was not free to leave." *Jimenez*, 33 A.3d at 732 (quoting *Vieira*, 913 A.2d at 1020). Accordingly, the trial justice correctly granted defendant's motion to suppress his on-the-scene statements.

Lastly, the state argues that the recorded statements made by defendant at the police station after his arrest and recorded in the Influence Report Form should not have been suppressed because the *Miranda* warnings given to defendant upon his arrest and again at the police station were sufficient to apprise defendant of his constitutional rights. However, the trial justice did not reach the issue of the sufficiency of the warnings in the context of the questioning at the police station. As discussed *supra*, the trial justice suppressed the recorded statements made by defendant at the police station as "fruits of the poisoned tree." The state's contention on appeal that the post-arrest *Miranda* warnings given to defendant by police officers were constitutionally sufficient neither addresses nor assigns error to the trial justice's reasons for suppressing those post-arrest recorded statements.

Therefore, because the trial justice did not address the issue of the sufficiency of the *Miranda* warnings in the trial court in the first instance, and because the state failed to address the trial justice's decision to suppress the statements as fruit of the poisonous tree, the issue of the sufficiency of the later-given *Miranda* warnings is not properly before this Court. *See Barnes v. Rhode Island Public Transit Authority*, 242 A.3d 32, 36-37 (R.I. 2020) ("[S]imply stating an issue for appellate review, without a meaningful discussion thereof or *legal briefing of the issues, does not assist the Court in focusing on the legal questions raised*, and therefore constitutes a waiver of that issue.") (emphasis added) (quoting *Fisher v. Applebaum*, 947 A.2d 248, 252 (R.I. 2008)); *see also Girard v. Sorel*, 85 R.I. 43, 44, 125 A.2d 212, 212 (1956) ("It is well settled that to bring up for review an alleged error in any * * * ruling made during trial, separate reasons of appeal specifying each alleged erroneous action must appear in the reasons of appeal."). Accordingly, we decline to reach this issue and take no position on its correctness.

**Conclusion**

Based on the foregoing, we affirm the order of the Superior Court. The papers in this case may be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Joseph Corcoran. |
| **Case Number** | No. 2020-121-C.A.<br>(W3/18-464A) |
| **Date Opinion Filed** | May 26, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melanie Wilk Thunberg |
| **Attorney(s) on Appeal** | For State:<br><br>Mariana E. Ormonde<br>Department of Attorney General |
| | For Defendant:<br><br>Nicholas J. Parrillo, Esq. |